J. H. WRAPE v. NORTH CAROLINA STATE HIGHWAY COMMISSION.

(Filed 15 January, 1965.)

**1. State § 5—**

The owner of a pond may not recover under the State Tort Claims Act for damage to the pond resulting from silt washed down from a fill necessarily incident to the improvement of a highway, the improvement having been made in accordance with the plans and specifications, and there being

no contention that the plans and specifications were faulty or negligently formulated.

**2. Same—**

Recovery under the State Tort Claims Act must be based upon negligence of commission on the part of a named State employee, G.S. 143-297(2), and mere omission or failure to act will not support a tort claim.

APPEAL by defendants from *Walker, S. J.*, February, 1964 Civil Session, RANDOLPH Superior Court.

The plaintiff, on August 3, 1961, filed a tort claim before the North Carolina Industrial Commission to recover $14,000.00, the estimated cost of removing the silt deposited in his fish pond by erosion from the regrading and relocation of a State Highway near, but not on his land. The items of cost constituting the claim are: $3,000.00 for cutting drainage ditch around the lake; $1,000.00 for constructing a wooden dam; $10,000.00 for removing dirt from the lake.

The claimant alleged the damages resulted from the negligence of Suber & Co., Inc., contractor, and agent for the State Highway Commission. Upon motion thereafter, the claim was amended to allege negligence on the part of W. F. Babcock, Director of Highways, W. H. Rogers, Jr., Chief Engineer, T. C. Johnston, Jr., Division Engineer, and Fred Beck, District Engineer.

The parties stipulated:

"That under State Highway Commission project #8.15803 there was a contract for the relocation and construction of N. C. Highway #49 near Asheboro, N. C., pursuant to a contract executed by and between Suber and Company, Inc., and the North Carolina State Highway Commission, according to Standard Specifications for Roads and Structures of the North Carolina State Highway Commission, dated October 1, 1952, as referred to in the contract. The contract was executed by W. F. Babcock, Director of Highways, W. H. Rogers, Jr., Chief Engineer, and approved by Mr. Brooks Peters, Assistant Attorney General, and that the work, with respect to said project, was completed by the contractors in accordance with plans and specifications of the State Highway Commission and pursuant to contract."

The claimant testified:

"I own a tract of land at or near my residence approximately twelve acres in size upon which is located a four acre pond, which I had constructed in 1938. . . . The pond was approximately twelve to fifteen feet in depth prior to construction on the reloca-

tion of N. C. #49 and it was fed from springs and streams, one stream runs under relocated N. C. #49 into the pond.

"A large portion of the relocation and reconstruction of N. C. Highway #49 is within the watershed area of my pond. I have lived here since 1936 and I have used my .pond, built in 1938, for watering cattle, for fishing and swimming, and watering my garden and lawn. My pond has been used for baptismal services by various churches and the Red Cross has taught swimming lessons there. I cannot use my pond for any of these purposes now because of the mud which is in there, you will just mire down.

"Prior to the Highway construction, the pond was crystal clear and on one side where I built a pier next to the house and I hauled sand in there to make that sand beach like, where there was swimming, there was no mud or silt in the bed of the pond prior to construction of Highway Project #8.15803. The water in the pond was never muddy at any season of the year.

"There is no other drainage area feeding into my pond, which has added to the mud and silt, except that from the Highway Construction project. The silt and mud still comes into my pond."

The evidence disclosed that after the grading was completed, the Highway Commission made an effort to seed the exposed surfaces in order to stop erosion. At best, the efforts were only partially successful. Rain water carried the dirt into the pond. The plaintiff offered evidence that his damage was $14,000.00.

The hearing commissioner's finding No. 10 is here quoted:

"That the relocation of N. C. Highway No. 49, under the direction of W. F. Babcock, Director of Highways, and W. H. Rogers, Chief Engineer, State Highway Commission, and as an incident thereof the construction of a fill some five hundred feet from the plaintiff's pond, constructed in such a manner as to allow silt, dirt and other alluvium to drain from the fill as aforesaid, through the water shed feeding the plaintiff's pond and thereby filling same to a depth of from six feet down to three feet, was a wrongful, negligent and tortious act committed by the defendant through its agents as hereinabove set forth and that such negligence proximately caused the damages to the plaintiff in the amount of $12,-000.00."

The deputy commissioner awarded damages in the sum of $10,000.00, the maximum allowed under the Tort Claims Act. Upon review, the Full Commission adopted the hearing commissioner's findings and conclusions, and approved the award.

The Superior Court on appeal overruled all of the defendant's exceptions and affirmed the award. The State Highway Commission appealed.

*Miller & Beck by G. E. Miller, Thomas L. O'Briant for plaintiff appellee.*

*T. W. Bruton, Attorney General, Harrison Lewis, Assistant Attorney General, John W. Twisdale, Staff Attorney, Andrew McDaniel, Trial Attorney for defendant appellant.*

HIGGINS, J.   The parties stipulated the construction work on Highway #49 was completed in accordance with the plans and specifications of the Highway Commission and pursuant to its contract. A tort claim, therefore, must be based on faulty plans or faulty specifications. Consequently, a showing of negligence on the part of a designated highway agent in making the plans or in preparing the specifications, is necessary before an award may be made against the State Highway Commission. The Tort Claims Act (G.S. 143-297) provides: "That the claim must contain . . .(2) the name of the department, institution, or agency of the State against which the claim is asserted *and the name of the State employee upon whose negligence the claim is based." Floyd v. Highway Commission,* 241 N.C. 461, 85 S.E. 2d 703.

An omission or failure to act will not support a tort claim. At one time, March 3, 1955, to May 16, 1955, a negligent omission was sufficient, but Chapter 1361, Session Laws of 1955, struck "omission" from the statute. *Flynn v. Highway Commission,* 244 N.C. 617, 94 S.E. 2d 571.

In this case, whose negligent act and what was it that caused the dirt to be carried by water into the claimant's pond? Suber & Co., Inc., the contractor, is let out by the stipulation. The only finding is against W. F. Babcock, Director of Highways, and W. H. Rogers, Jr., Chief Engineer. The finding that Highway #49 was relocated under their direction and as an incident to the relocation a fill was constructed within 500 feet of plaintiff's pond; that silt and dirt were carried by drainage into the pond, are insufficient bases for a finding of negligence. No way is suggested by which rain may be kept from falling on cuts and fills incident to highway construction. Erosion follows as a matter of course. The process may be retarded by grass or vegetation but the growth takes time, careful attention, suitable soil, and favorable weather.

The plaintiff is in the same legal position as other landowners whose property is taken or damaged by the construction of public roads.

Negligent planning, or negligent execution of plans may give rise to a tort claim; but in the absence of negligent acts the owner of property is entitled to compensation if the construction of highways amounts to a taking of his property. *Eller v. Board of Education*, 242 N.C. 584, 89 S.E. 2d 144. In this case a State agency, after hearing, has fixed the plaintiff's damage at $12,000.00. If by filing a tort claim rather than a suit in condemnation the plaintiff has permitted the lapse of time to close the door to the courts, nevertheless a coordinate branch of the State Government may be inclined to see the debt is paid.

The findings do not specify any negligent act on the part of either Mr. Babcock or Mr. Rogers. The Superior Court should have sustained Exception No. 6 to finding No. 10 made by the Hearing Commissioner and adopted by the Full Commission. The finding that they were negligent is without support in the evidence.

The judgment of the Superior Court is reversed. This proceeding will be remanded to the North Carolina Industrial Commission for the entry of an award denying the plaintiff's claim.

Reversed.