SYLVESTER G. BROOKS v. UNIVERSITY OF NORTH CAROLINA
No. 68IC120

(Filed 14 August 1968)

**1. State § 7— Tort Claims Act — duty of Industrial Commission**

The Industrial Commission is to determine whether a claim brought under the Tort Claims Act arose as the result of a negligent act of an

employee of the State under such circumstances that if the defendant were a private person there would be liability.

**2. State § 8— Tort Claims Act — negligent acts of State employees**

The Tort Claims Act permits recovery only for the negligent acts of State employees, but does not permit recovery for their negligent failure to act.

**3. State § 7— tort claim against State — requisites of affidavit**

An affidavit setting forth the names of the alleged negligent State employees but which does not allege the specified act or acts of negligence relied upon is insufficient to support a claim under the Tort Claims Act.

**4. State § 8— tort claim against State — negligent act — sufficiency of evidence**

In an action under the Tort Claims Act for injuries received as a result of eating collard greens containing pieces of wire at a state university cafeteria, evidence of how vegetables are generally prepared and inspected for foreign material at the cafeteria is insufficient to support an award to claimant, there being no evidence of any negligent act on the part of a named cafeteria employee in the preparation of the collard greens.

APPEAL by defendant from an opinion and award, 3 January 1968, of the North Carolina Industrial Commission.

This is a proceeding under the Tort Claims Act. Plaintiff filed an affidavit in which he alleged that his claim was "against The University of North Carolina at Chapel Hill, N. C. for damages resulting from the negligence of the cooking & serving department of Chase Cafeteria of the University of North Carolina at Chapel Hill, N. C." He further alleged that the date of the alleged occurrence was 8 November 1965. He further alleged "That the injury or property damage occurred in the following manner: While eating collard greens at Chase Cafeteria at lunch, claimant swallowed some pieces of wire in the collards, and immediately went to the Cafeteria Manager, who sent claimant to Memorial Hospital Infirmary at Chapel Hill where x-rays were taken." There followed allegations with respect to his subsequent hospitalization, surgery, loss of weight, medical expense, loss of time from work, etc. Defendant demurred and plaintiff filed an amended affidavit in which the only change was that he alleged his claim was "against the University of North Carolina at Chapel Hill, N. C. for damages resulting from the negligence of Arnold Pender, Manager and the following who were cooks: Liddie Thompson, Fannie Edwards, Roberta Adams, Melba Brandon and Curtis Farrow." Defendant filed a pleading denominated "Answer, Demurrer or Other Pleading of Defendant to Plaintiff's Affidavit" which sets out the following: "The defendant, answering the plaintiff, alleges and says: 1. That it affirms its answer and demurrer

filed to plaintiff's original affidavit in all respects, which answer and demurrer was filed on the 16th day of June, 1966, with the Industrial Commission." The matter was heard before Commissioner Marshall. Order was entered 15 September 1967 awarding plaintiff $2,750.00. Defendant appealed to the Full Commission. The Full Commission adopted the findings of fact and conclusions of law of Commissioner Marshall and affirmed the award.

*T. W. Bruton, Attorney General, by Mrs. Christine Y. Denson, Staff Attorney, for defendant appellant.*

*Everett & Creech by William A. Creech for plaintiff appellee.*

MORRIS, J.

Plaintiff, in his brief again asks the Court to consider motion to dismiss previously considered by the Court *en banc* and denied. We see no reason to consider the motion again, and plaintiff has given no reason which compels reconsideration. In any event, had such compelling reasons been advanced, the Court would consider the appeal as a petition for *certiorari* and proceed to consider the matter on its merits.

The affidavit filed by plaintiff refers to Liddie Thompson, the commissioner's order refers to Linda J. Thompson, the transcript of evidence gives the witness' name as Lydia J. Thompson. We assume that all these refer to the same person.

The findings of fact having to do with the actions of defendant are numbers 6 and 7. Number 6, to which defendant does not except, is as follows:

> "6. The collard greens were purchased by the University in one-gallon sealed cans. These cans were opened in the cafeteria kitchen and removed from the cans into university-owned cooking utensils. They were then inspected and cooked and then delivered to the cafeteria serving line where plaintiff made his purchase as hereinabove described."

Defendant excepts to finding of fact No. 7 as follows:

> "As set forth above, the defendant through the acts of the cook in the cafeteria, Linda J. Thompson, were negligent in permitting the greens to be sold to a cafeteria customer with such foreign matter located in them",

for that the finding is not supported by competent evidence; and to the commissioner's conclusion of law No. 1 based thereon as follows:

"The defendant through employee, Linda J. Thompson, was negligent in the preparation of the foodstuff sold by the cafeteria by permitting said foreign matter to be left in the food when it was sold to the customers."

We think defendant's exception is well taken. The only cafeteria employee to testify was Lydia J. Thompson, called by the plaintiff as an adverse witness. She testified in substance that she had worked at Chase Cafeteria since 1 October 1965; that she had worked in the kitchen since that time, first as a cook's helper and then as a cook; that she was familiar with the vegetables and how they were cooked "since I have been in that department"; that she was familiar with how she prepared vegetables; that the procedure she was taught to use had not changed; that the vegetables come either in number 10 cans or frozen; that the cans are cleaned before they are opened with an electric can opener which is cleaned before and after use; that the liquid is drained off into a stainless steel colander and the vegetables removed to a pot in which they are cooked; that for a normal luncheon meal sometimes two and sometimes three cases of mustard greens would be used; that approximately 240 servings would be expected; that the greens are dumped on a stainless steel table and inspected for foreign matter; that after they are cooked they are placed in serving pans and taken to the cafeteria; that with the large quantity of vegetables that go through the kitchen "it is not impossible to inspect it because we are supposed to inspect them and that is what I do"; that three of the cooking staff are still at the cafeteria who were there on 8 November 1965 when Mr. Brooks ate his luncheon meal there; that after the food is cooked, it is taken from the pot with a food ladle "and if there is anything in there we should see it"; "I inspect the food thoroughly before I put it into the pot and when I go to take it out of the pot I look"; to inspect the frozen food you bump it against the table and it falls on the table; for frozen mustard greens the cook takes the frozen food out ahead of time, they are put in cold water and they "fall a loose"; as to whether frozen vegetables were used in November 1965, "At that time I was not cooking vegetables and I can not say what was used at that time"; that the procedure described by her is the procedure used since she has been in the kitchen. She further testified that approximately 1200 servings of food are inspected daily for the luncheon meal; that she starts cooking at 8:30 and they start taking it to the cafeteria at 11:00.

[1-4]    Plaintiff brings this action under the provisions of the Tort Claims Act. Under that Act, the Industrial Commission is to determine whether a claim brought thereunder arose as the result of

a negligent act of an employee of the State under such circumstances that if the defendant were a private person there would be liability. The Act permits recovery only for the negligent *acts* of employees of the State — not for their negligent failure to act. G.S. 143-291; *Wrape v. Highway Commission,* 263 N.C. 499, 139 S.E. 2d 570.

> "It is necessary to recovery that the affidavit filed in support of the claim and the evidence offered before the Commission identify the employee alleged to have been negligent and set forth the specific act or acts of negligence relied upon." *Ayscue v. Highway Commission,* 270 N.C. 100, 103, 153 S.E. 2d 823.

The affidavit filed in this case does not meet the tests. It contains the names of employees but there is no allegation of any act or acts done by any of them. Neither is there any evidence of any negligent act on the part of any of them. The only evidence as to preparation of food was evidence of how foods are generally prepared. There is no evidence of how foods were prepared on 8 November 1965. Indeed there is no evidence in the record at all as to how collard greens were prepared at any time or that collard greens were ever prepared. Plaintiff alleged he was damaged as the result of eating collard greens in which there was wire. The only witness to testify testified in detail as to the preparation of mustard greens.

There is no evidence in the record before us which would support a finding of a negligent act on the part of the employee Lydia Thompson. The mere showing that a large quantity of food was prepared at the cafeteria in a relatively short period of time is not evidence of negligence.

The questions whose negligent act and what it was which caused the wire to be in the collard greens, as plaintiff alleged, are unanswered in the record in this case.

The judgment and award of the Full Commission is

Reversed.

CAMPBELL and BRITT, JJ., concur.