DAISY O. FLOYD, ADMINISTRATRIX OF E. L. FLOYD, DECEASED, v. NORTH CAROLINA STATE HIGHWAY AND PUBLIC WORKS COMMISSION.

(Filed 4 February, 1955.)

**1. State § 3a—**

The State Tort Claims Act is in derogation of the sovereign immunity from liability for torts, and the sounder view is that the Act should be strictly construed, and certainly the Act must be followed as written.

**2. Same—**

A claim under the State Tort Claims Act must identify the employee of the State whose negligence is asserted, and set forth the act or acts on his part which are relied upon.

**3. State § 3b—**

In order for claimant to prevail in a proceeding under the State Tort Claims Act, he must show not only injury resulting from negligence of a designated State employee, but also that claimant was not guilty of contributory negligence.

**4. Same—Evidence held to support sole conclusion that State employee was not guilty of negligence.**

The evidence tended to show that some eight months prior to the accident in question a fill on a county road was raised two or three feet, that at the time the work was performed the county maintenance supervisor

was advised that the fill had washed out once before in the approximately 30 years the road had been built, that the supervisor thereupon directed that the old tile culvert be ripped out and be replaced with tile of larger diameter, that the up-stream side was laid with larger tile but the down-stream side was finished with the original tile, and that after an exceptionally heavy rain, the road again washed out, resulting in the death of claimant's intestate when he drove into the washout at a time of poor visibility. *Held:* The mere fact of the washout does not establish negligence, nor was the superintendent under duty to go back and inspect to see that his directions had been carried out, and therefore, the evidence is insufficient to support a claim based upon the alleged negligence of the supervisor.

**5. Highways § 4b—**

It is not required that highways be constructed in such manner as to insure safety under all conditions, it being a matter of common knowledge that culverts, fills, embankments, and whole sections of roads give way to the destructive force of flood waters.

**6. Evidence § 5—**

It is a matter of common knowledge that increase in pressure increases the flow of water, and that, therefore, an increase in the height of a highway fill, by increasing the volume of water impounded, will increase the flow of water through a culvert under the fill so as to make the road safer from washouts than it was before the height of the fill was increased.

PARKER, J., dissenting.

APPEAL by defendant from *Clarkson, J.,* February 1954 Civil Term, DAVIDSON.

This is a proceeding before the North Carolina Industrial Commission under the Tort Claims Act, Section 1, Chapter 1059, Session Laws 1951, now G.S. 143-291, *et seq.*

The plaintiff, Administratrix of E. L. Floyd, sets forth in her claim and affidavit that the death of her intestate was the result of negligent acts on the part of Fred L. Everhart and Elton Cross, employees of the State Highway and Public Works Commission. It is claimed that in rebuilding a culvert and fill on a public highway in Davidson County they used drainage tile of a size insufficient to carry surface water after heavy rains; that after an unusually heavy rainfall on the night of 4 March, 1952, surface water was impounded above the fill, resulting in a washout across the road of a depth equal to the height of a 1930 Ford automobile and of a width slightly more than the length of the Ford. Just before daylight, when visibility was poor on account of light rain and fog, plaintiff's intestate drove his Ford automobile into the washout, sustaining injury resulting in his death.

The evidence tended to show that the road had been built for approximately 30 years; that 30-inch tile was originally used to carry water under the fill at the place where the accident occurred. However, about

eight months prior to the accident the State Highway and Public Works Commission rebuilt the road, raised the fill two or three feet and applied an asphalt treatment to the road surface.

Mr. C. R. Garner, a plaintiff's witness who owned the land adjacent to the fill, testified: "I told Mr. Fred Everhart that since he was building the road higher and had his men and equipment there, I thought it would be a good time to place a larger tile in there because this had washed out *once* before . . . He agreed that I was right and told the boys to go ahead and rip out the old tile and put in larger tile. They went ahead and tore it out and sent a man after large tile. He didn't bring enough . . . and they finished out with the same tile that was there. The large tile was placed on the up-stream side and they finished the culvert with the small tile down-stream. Mr. Everhart didn't stay around to see that his orders were carried out. I couldn't say as to whether he ever inspected the finished job. He wasn't there when the job was finished. He gave instructions about how to do it but he went on about his work, I suppose." Mr. Garner further testified that in the 30 years he had lived in that vicinity the fill had washed out *twice* before, the last time about eight or ten years prior to the time of the accident.

The parties entered into the following stipulation:

"Defendant's counsel stipulated that Daisy O. Floyd was the duly appointed, qualified Administratrix of the estate of E. L. Floyd, deceased, who died as a result of injuries received from an accident on March 4, 1952. Counsel further stipulated that the accident occurred on a county road, which was a part of the county road system of the State Highway and Public Works Commission, and that the work done on this road was done by employees of the State Highway and Public Works Commission in the course and scope of their employment, and that Fred Everhart was employed by the State Highway and Public Works as County Maintenance Supervisor in Davidson County and as such was in charge of the supervision of the county road system of the State Highway and Public Works Commission in Davidson County."

A hearing was held before Commissioner Bean of the North Carolina Industrial Commission, who took testimony, made findings of fact and stated conclusions of law. A recovery was denied on the ground the evidence failed to show a negligent act on the part of the employees of the State Highway and Public Works Commission. The plaintiff in apt time appealed from the order and findings to the full Commission, alleging errors in certain designated particulars. The full Commission, after hearing and reviewing the record, adopted as its own the findings of fact and conclusions of law reported by Commissioner Bean. In addition, the full Commission stated as its opinion: "The rain was of such unusual magnitude as to constitute an act of God." The full Commission was

further of the opinion "plaintiff's intestate was guilty of contributory negligence in failing to observe the washout in time to stop his car before running into it, and that his contributory negligence was one of the proximate causes of his death." The full Commission approved and affirmed the order denying recovery.

From the order and findings of the full Commission, the plaintiff appealed to the Superior Court of Davidson County, specifying 27 exceptions and assignments of error in the Commission's findings and conclusions. Upon the hearing in Superior Court, the trial judge sustained 15 exceptions. In reference to ten other exceptions and assignments of error, "The Court holds the findings of fact are insufficient to enable the Court to determine the rights of the parties and remands the cause to the North Carolina Industrial Commission for further findings." Two exceptions were overruled "without prejudice." From the order of the Superior Court, the defendant brings this appeal.

*DeLapp & Ward and Charles W. Mauze for plaintiff, appellee.*
*R. Brookes Peters and Kenneth Wooten, Jr., for defendant, appellant.*

HIGGINS, J. In 1951 the State, acting through its legislative branch (Chapter 1059, Session Laws 1951), waived its immunity from suit in cases where injury and damage result from the acts of negligence of its employees. The United States and some of the other states have similar statutes. The courts are not in agreement as to whether such acts should be strictly or liberally construed. Inasmuch as the acts permitting suit are in derogation of the sovereign right of immunity, we think the sounder view is that they should be strictly construed. The authorities are cited in the concurring opinion by *Justice Bobbitt* in the case of *Alliance Company v. State Hospital, ante,* 329. At any rate, the statute giving the right to maintain the suit must be followed as written. G.S. 143-291 authorizes the filing of the claim before the North Carolina Industrial Commission. G.S. 143-297 provides that the claim must be accompanied by an affidavit in duplicate, setting forth among other things, (b) The name of the department, institution or agency of the State against which the claim is asserted *and the name of the State employee upon whose alleged negligence the claim is based.* The purpose of requiring the claimant to specify the State employee whose negligent act caused the injury is to enable the State or department to make proper investigation as to the employee designated and ascertain the facts with respect to his alleged acts of negligence, and present evidence or be heard with respect thereto.

In this case the claimant charges negligence against Fred L. Everhart and Elton Cross. Nowhere in the evidence is Cross mentioned. There

is no evidence of any act on his part, negligent or otherwise. If recovery is sustained, therefore, it must be on the negligence of Everhart alone. It isn't enough to say that some employee's negligence caused the injury. The claim and the evidence must identify the employee and set forth his act or acts of negligence which are relied upon. Even in the ordinary case of negligence between private parties the proof must follow the allegation as to whose negligence caused the injury. *Whichard v. Lipe,* 221 N.C. 53, 19 S.E. 2d 14. However, in order to sustain an award under the Tort Claims Act, the claimant must show not only injury resulting from a designated employee's negligence, but also must go further and show that the claimant was not guilty of contributory negligence. For the claimant to prevail in this case she must show a negligent act on the part of Everhart proximately causing the injury and, in addition thereto, she must show absence of contributory negligence on the part of her intestate. Failure in either particular defeats recovery.

The record contains all the evidence presented at the hearing. Careful examination compels the conclusion that certain of the findings of fact made by the hearing commissioner and adopted and confirmed on appeal by the full Commission are not supported by the evidence. However, the unsupported findings relate to unimportant details without bearing on the question of Everhart's negligence. The evidence upon which the claimant seeks to charge Everhart is: (1) He was Maintenance Supervisor for Davidson County; (2) while rebuilding the road he failed to see that his instructions were carried out with respect to the use of larger tile after he had notice that the fill had washed out once before in 30 years.

True, in his evidence, Garner stated the fill had washed out twice before, the last time about eight or ten years prior to the time the repairs were being made. However, the plaintiff's uncontradicted evidence is that he told Everhart the fill had washed out *once* before. The claimant contends Everhart was negligent in that he failed to make inspection and ascertain whether his directions had been carried out. The instructions were given, Everhart went on about other duties. The tile was installed, the fill completed, which, of course, covered up the tile. There is no evidence that Everhart had notice that his instructions had been carried out only in part. Was the maintenance supervisor in charge of the county road system of a large and populous county required to go back to the fill, measure the tile at each end to see if the tile down-stream was the same size as the tile up-stream? Suppose Everhart had permitted the fill to remain as it was with the tile that so far as he knew had carried the water for 30 years, except on one occasion. Can it be charged that in so doing he committed an act of negligence within the meaning of the law? Maintenance supervisors throughout the State know of washouts.

Can it be that in event of a second washout the State Highway and Public Works Commission is liable should injury result?

No longer do we encounter open fords on our highways. Roads cross watercourses and drainage ditches over bridges and culverts. That these structures are matters of engineering and planning is common knowledge. To build them in such manner as would insure safety under all conditions is too much to expect. The cost would be prohibitive. Bridges, culverts, fills, embankments and whole sections of roads give way to the destructive force of flood waters. Road repair work is usually emergency work, made out of materials close at hand in order that modern travel may move with a minimum of delay and inconvenience. Once, and only once, so far as Everhart knew, the 30-inch pipe had proved insufficient to carry flood water during a period of 30 years.

New repairs made eight months before the accident raised the fill two or three feet. The effect was to increase the volume of impounded water above the fill, by actually how many gallons or cubic feet only an hydraulic engineer could say. By common knowledge, however, the increase was substantial. This, of course, lessened the chance of overflow from a hard rain. Not only the increased capacity to hold the water above the fill, but the pressure of so much additional water increased the rate of flow through the tile, lessening the danger of overflow. In order to see a manifestation of this principle, it is only necessary to turn on a water spigot. Pressure determines the rate of flow, and increased pressure increases the flow, and it makes no difference whether the pressure comes from the weight of additional water or from compressed air in a tank. These are matters of usual, everyday observation—a part of our common knowledge —so, actually the tile would carry, and the fill would withstand a substantially greater volume of surface water than would have been the case before the repairs were made. The road was safer from flood than it was before.

The Industrial Commission found that Everhart was not guilty of any act of negligence. The evidence not only supports this finding, but would be insufficient to support any finding to the contrary. There is no evidence that the larger tile would have been sufficient to carry the water. So far as the record is concerned, no inspection was made to determine whether debris picked up by moving water partially impeded the flow through the culvert. The evidence leaves too much in the realm of speculation and conjecture to form the basis for a finding of negligence. The claim must fail for want of proof. It, therefore, becomes unnecessary to consider proximate cause and contributory negligence.

A combination of unfortunate circumstances caused Mr. Floyd to lose his life: (1) A very heavy rainfall; (2) a culvert that proved inadequate to carry off surface water; (3) a washout which Mr. Floyd happened to

approach at a time when visibility was poor because of the time of day, rain and fog; (4) he failed to see the washout, drove into it and was killed. Such are the hazards of life.

It is ordered that the case be remanded to the Superior Court of Davidson County to the end that a judgment be there entered confirming the order of the North Carolina Industrial Commission.

Reversed and remanded.

PARKER, J., dissenting: I do not agree with the expression in the majority opinion that we think the sounder view is that the Tort Claims Act of this State should be strictly construed. The doctrine of strict application of statutes waiving sovereign immunity has been held in *U. S. v. Aetna Cas. & S. Co.*, 338 U.S. 366, 94 L. Ed. 171 (1949) not applicable to the Federal Tort Claims Act. In that case *Vinson, Chief Justice,* said for the Court: "In argument before a number of District Courts and Courts of Appeals, the Government relied upon the doctrine that statutes waiving sovereign immunity must be strictly construed. We think that the congressional attitude in passing the Tort Claims Act is more accurately reflected by *Judge Cardozo's* statement in *Anderson v. John L. Hayes Constr. Co.*, 243 N.Y. 140, 147, 153 N.E. 28: 'The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced.'"

The purpose of our Tort Claims Act was to relieve the General Assembly from the judicial function of passing upon tort claims against the State, and was enacted pursuant to the current trend of legislative thought to waive the State's immunity from suit. When the State has done so, I think the statute should not be strictly construed, but construed as expressed in the words of *Cardozo, J.,* quoted by *Chief Justice Vinson.*

I agree with the trial judge that the findings of fact were insufficient to enable the lower court to determine the rights of the parties, and that the cause should be remanded to the Industrial Commission for further findings.