NESBIT A. KING, JR., AS ADMINISTRATOR OF THE ESTATE OF HIS DECEASED WIFE, SHERRI SPARROW KING, PLAINTIFF v. DURHAM COUNTY MENTAL HEALTH DEVELOPMENTAL DISABILITIES AND SUBSTANCE ABUSE AUTHORITY, LUTHERAN FAMILY SERVICES IN THE CAROLINAS, MOHAMMED THOMPSON, CARLOS NICHOLS, AND DURHAM COMMUNITY GUIDANCE CLINIC FOR CHILDREN AND YOUTH, INC., DEFENDANTS

No. 9214SC1337

(Filed 18 January 1994)

**Negligence § 95 (NCI4th)— murder by Willie M. class member— no liability of service providers**

In an action to recover for the wrongful death of plaintiff's intestate who was shot to death during a robbery by a seventeen year old who had been certified as a "Willie M." class member, defendants, who evaluated and provided services including residential treatment for Willie M. class members, were entitled to judgment as a matter of law where there was no dispute that defendants were aware of the killer's propensity for violence, but there was no evidence of a court order requiring his participation in the Willie M. program and his participation was thus voluntary, and none of the defendants therefore had custody of the killer or the ability or right to control him, and, accordingly, they could not be held liable for his conduct when he killed plaintiff's intestate.

**Am Jur 2d, Negligence §§ 21, 458 et seq.**

Appeal by plaintiff from orders entered 14 May 1992, 14 July 1992, and 22 July 1992 in Durham County Superior Court by Judge A. Leon Stanback, Jr. Heard in the Court of Appeals 16 November 1993.

*Patton, Boggs & Blow, by Kenneth J. Gumbiner and Julie A. Davis, for plaintiff-appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Timothy P. Lehan, for defendant-appellee Durham County Mental Health Developmental Disabilities and Substance Abuse Authority.*

*Cranfill, Sumner & Hartzog, by H. Lee Evans, Jr. and Kari Lynn Russwurm, for defendant-appellee Lutheran Family Services.*

*Faison & Fletcher, by O. William Faison and Selina S. Nomeir, for defendant-appellee Durham Community Guidance Clinic for Children and Youth, Inc.*

GREENE, Judge.

Nesbit A. King, Jr. (plaintiff), as Administrator of the Estate of his deceased wife, Sherri Sparrow King, appeals from the dismissal of his complaint filed in the superior court against Durham County Mental Health Developmental Disabilities and Substance Abuse Authority (Durham Mental Health), Lutheran Family Services in the Carolinas (Lutheran Services), and Durham Community Guidance Clinic for Children and Youth, Inc. (Guidance Clinic). The plaintiff's action against Mohammed Thompson (Thompson) and Carlos Nichols (Nichols) has not been dismissed.

The complaint alleged that on 27 February 1990, Sherri Sparrow King was shot to death by Thompson and Nichols in the course of a robbery of a convenience store located in Person County. Thompson, who was seventeen years old at the time of the murder, had a history of drug abuse and violent crime and, after his certification as a Willie M. class member in the spring of 1988, had been transferred from a state training school to Triangle House in Durham County. Triangle House, operated by Lutheran Services under contract with Durham Mental Health, was a "high management facility" which provided residential treatment to Willie M. class members. A Willie M. class member is a minor "having serious emotional, mental or neurological handicaps accompanied by violent or assaultive behavior." Durham Mental Health, which had waived its governmental immunity by purchasing liability insurance, coordinated the administration of services to Willie M. class members in Durham County and was responsible for providing secure facilities. Lutheran Services was responsible for providing evaluation and treatment to the residents of Triangle House and providing facilities "equipped to prevent residents from escaping and posing a threat to the community." Guidance Clinic contracted with Durham Mental Health to provide psychological testing, evaluation, and treatment to the residents of Triangle House. In January 1990, Thompson was transferred from Triangle House to a drug rehabilitation center.

"Before completing treatment . . . he returned to Triangle House, still with a drug dependence problem. Upon his return, Thompson was required to stay at the facility at all times in order to prevent his continued abuse of drugs. The possibility of his escape posed a clear and present danger to the general public." After his return to Triangle House, neither Durham Mental Health, Guidance Clinic, nor Lutheran Services initiated any evaluations of Thompson to determine the risk to the community. In mid-January 1990, Thompson left Triangle House through a door left unlocked "in violation of the facility's rules." In violation of regulations, Lutheran Services, Durham Mental Health, and Guidance Clinic failed to inform the police that Thompson had left Triangle House and failed to return Thompson to the facility.

The complaint also alleges that the defendants' failure to evaluate Thompson, the failure to provide a secure facility, and the failure to seek his return after he left Triangle House was "gross negligence" and that because of Thompson's history of drug abuse, violence, and other unlawful activity, it was reasonably foreseeable that his escape could lead to armed robbery and murder.

Durham Mental Health and Lutheran Services moved to dismiss the complaint on the bases of Rules 12(b)(1) and 12(b)(6). Guidance Clinic moved to dismiss on the basis of Rule 12(b)(6). At the hearing on the motions various documents were presented to the trial court including the following: (1) a performance audit report, dated March 1991, from the Office of the State Auditor which reveals that the State of North Carolina entered into a federal court consent decree in 1980 agreeing that the Department of Human Resources and the Department of Public Instruction would provide Willie M. class members with "the medical treatment, education, training and care which was suited to each child's individual needs." "In lieu of developing a new system of services throughout the State, the [State of North Carolina] chose to use local independent area mental health programs and educational agencies to provide the needed services to class members." A complete system of services was mandated, "ranging from a highly restrictive treatment environment (such as a locked residential facility or a high management group home) to the least restrictive setting (such as independent apartment living and outpatient treatment services)"; (2) a report, dated October 1990, and titled "The Willie M. Program" prepared by the North Carolina Department of Human Resources and the North Carolina Department of Public Instruction which reveals that

although the Willie M. Program operation must "conform to state regulations, state supervision, and must meet the standards defined by the state," its operation is the ultimate responsibility of the local mental health boards; (3) a Mental Health Study Commission report, dated 28 February 1991, which states that the "[u]ltimate responsibility for serving Willie M. class members has been fixed at the state level. The State has designated the local mental health program as the lead agency for ensuring that its obligations to class members are met"; (4) a document entitled "Criteria for Certification as a Class Member" which states that to meet the behavioral criteria for certification as a Willie M. child, there must be evidence of one of the following:

[a] physical attacks against other persons, with or without weapons

[b] physical attacks against property, including burning

[c] physical attacks against animals

[d] self abusive or injurious behavior, including suicide attempts

[e] threatened attack with a deadly weapon

[f] forcible sexual attacks;

(5) a section from the Willie M. Manual which describes a high management home as one providing "treatment in a highly structured community residential setting to children with moderate to severe behavior problems, mental retardation, or other handicaps." "These group homes are not locked, but they do have 24-hour awake staff, and security precautions are taken"; (6) a portion of the second set of stipulations entered into in the federal Willie M. case, which in relevant part states that each Willie M. child is to be provided with the least restrictive living condition appropriate for that child. "Among the factors to be considered in determining the least restrictive living conditions . . . are the need to minimize the possibility of harm to the individual and society"; and (7) a document entitled "The Willie M. Lawsuit," prepared by the North Carolina Department of Human Resources and dated "Fall, 1988." This document states in part that the plan of treatment for each Willie M. certified child "should . . . respond to the [federal] court's mandate to ensure the safety of the community." This document further states that although the State is "obligated to provide appropriate services to all members of the [Willie M.] class[,]

. . . [it is] accepted that there may be times when the [State] will be unable to fulfill [its] obligations to some class members." For example, when the "parent or non-agency guardian, or the child himself, refuses for the certified Willie M. class member to receive services or participate in services called for in the child's Individual Habilitation Plan."

The trial court determined that the complaint against Guidance Clinic presented an "insurmountable bar to recovery" and dismissed this complaint pursuant to Rule 12(b)(6). The trial court determined that it "lacked subject matter jurisdiction over the dispute" and dismissed, pursuant to Rule 12(b)(1), the complaint against Durham Mental Health and Lutheran Services. In the alternative, the trial court dismissed the complaint pursuant to Rule 12(b)(6).

---

The dispositive issue is whether, on this record, any of the defendants had a duty to Sherri Sparrow King.

We note initially that "matters outside the pleadings [were] presented to and not excluded by the [trial] court," thereby converting defendants' motions to dismiss pursuant to Rule 12(b)(6) into Rule 56 motions for summary judgment, and we review the motions accordingly. *Stanback v. Stanback*, 297 N.C. 181, 205, 254 S.E.2d 611, 627 (1979). Thus, the question is whether there are genuine issues of material fact and if not, whether defendants are entitled to judgment as a matter of law. *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 329 N.C. 646, 650, 407 S.E.2d 178, 181 (1991).

The general rule is that there "is no duty to protect others against harm from third persons." W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 56, at 385 (5th ed. 1984) [hereinafter *Prosser and Keeton*]; Restatement (Second) of Torts § 315 (1965); *see Braswell v. Braswell*, 330 N.C. 363, 370-71, 410 S.E.2d 897, 901 (1991). An exception to this general rule is recognized when a special relationship exists between parties. *Prosser and Keeton* § 56, at 383-85; Restatement (Second) of Torts § 315; 3 Fowler V. Harper, Fleming James, Jr., and Oscar S. Gray, *The Law of Torts* § 18.7, at 734 (1986) [hereinafter *Harper, James, and Gray*]; *Dudley v. Offender Aid and Restoration of Richmond, Inc.*, 401 S.E.2d 878, 881 (Va. 1991); *see Braswell*, 330 N.C. at 370-71, 410 S.E.2d at 902; Note, *Torts—Duty to Control Others*, 19 La. L. Rev. 228, 229 (1958). In such event, there is a duty "upon the actor to control the third person's conduct," Restatement (Second)

of Torts § 315(a), and "to guard other persons against his dangerous propensities." *Prosser and Keeton* § 56, at 383. Some examples of such recognized special relationships include: (1) parent-child, Restatement (Second) of Torts § 316; *Prosser and Keeton* § 56, at 384; *Moore v. Crumpton*, 55 N.C. App. 398, 403-04, 285 S.E.2d 842, 845, *modified*, 306 N.C. 618, 295 S.E.2d 436 (1982); (2) master-servant, Restatement (Second) of Torts § 317; *Prosser and Keeton* § 56, at 384; *Harper, James, and Gray* § 18.7, at 738-39; *Vaughn v. Department of Human Resources*, 296 N.C. 683, 686, 252 S.E.2d 792, 795 (1979); (3) landowner-licensee, Restatement (Second) of Torts § 318; (4) custodian-prisoner, Restatement (Second) of Torts § 319; *Hull v. Oldham*, 104 N.C. App. 29, 38, 407 S.E.2d 611, 616, *disc. rev. denied*, 330 N.C. 441, 412 S.E.2d 72 (1991); *see Dudley*, 401 S.E.2d at 881-82; and (5) institution-involuntarily committed mental patient, Restatement (Second) of Torts § 319; *Prosser and Keeton* § 56, at 384; *Pangburn v. Saad*, 73 N.C. App. 336, 347-48, 326 S.E.2d 365, 372-73 (1985), *see Semler v. Psychiatric Institute*, 538 F.2d 121, 125 (4th Cir.), *cert. denied*, 429 U.S. 827, 50 L. Ed. 2d 90 (1976); *Currie v. United States*, 836 F.2d 209, 212 (4th Cir. 1987). In each example, "the chief factors justifying imposition of liability are 1) the ability to control the person and 2) knowledge of the person's propensity for violence." *Abernathy v. United States*, 773 F.2d 184, 189 (8th Cir. 1985); *see O'Connor v. Corbett Lumber Corp.*, 84 N.C. App. 178, 186, 352 S.E.2d 267, 272-73 (1987) (summary judgment for defendant-employer affirmed where employer had no "custodial" duty to control prison work release employee outside the scope of the employment); *Prosser and Keeton* § 56, at 383 (duty arises if relationship is "custodial").

In this case, there is no dispute that the defendants were aware of Thompson's propensity for violence. A Willie M. certified class member is by definition a violent person, and the defendants were charged with the responsibility of providing treatment especially designed for Willie M. children. The more difficult question is whether any of the defendants had custody of Thompson or the ability or right to control him.

Materials in this record establish that the State of North Carolina is obligated to provide appropriate services to every Willie M. certified class member in this state. The participation by the class member is voluntary, however, and, in the absence of a court order, cannot be mandated. Thus, although the defendants had an obligation to ensure the safety of the community, may have

had an obligation to report Thompson's absence from Triangle House to the police and an obligation to seek his return, because there is no evidence of a court order requiring his participation in the Willie M. program, they had no legal right to mandate his return to the facility. It cannot therefore be said that any of the defendants had custody of Thompson or that they had the ability or right to control him. *See Cantrell v. United States,* 735 F. Supp. 670, 673 (E.D.N.C. 1988) (voluntary commitment to mental institution did not confer control over patient). Accordingly, the defendants cannot be held liable for the conduct of Thompson on 27 February 1990 and are entitled to judgment as a matter of law. We need not therefore decide whether dismissal was also correct pursuant to Rule 12(b)(1).

Affirmed.

Judges MARTIN and JOHN concur.