The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hoag. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
******************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. All parties are properly before the court and the court has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated and there is no question of misjoinder or non-joinder.
3. On 2 June 1991 plaintiff was visiting her son, William Red Freuler, an inmate at Eastern Correctional Center in Maury.
4. Eastern Correctional Center in Maury is a correctional center owned, operated and maintained by the State of North Carolina, by and through the North Carolina Department of Correction.
5. Visitation at Eastern Correctional Center occurs in a visitation snack bar area of the facility which contains chairs, tables, and vending machines.
6. On 2 June 1991 the floor of the visitation snack bar area was composed of a non-carpeted linoleum or tile type substance.
7. During her visit to Eastern Correctional Center on 2 June 1991 plaintiff slipped and fell on the floor of the visitation snack bar area.
8. A claim was duly filed with the Industrial Commission. Liability was denied by defendant. No benefits have been paid to plaintiff at this time.
9. Plaintiff has received medical treatment for her injuries from Greenville Family Doctors; Pitt Orthopaedic; East Carolina Physical Therapists and Eastern Radiologist for a total incurred medical expense in the sum of $1,686.07 as set forth in plaintiff's exhibits A1-A4-4.4 stipulated to in the Pre-Trial Agreement.
10. In addition, plaintiff has incurred expenses for medication for the treatment of pain in the amount of $911.18, consisting of $756.36 in bills from Revco Drugs and $154.82 in bills from Kerr Drugs as set forth in Plaintiff's Exhibits A5-A6.4 stipulated to in the Pre-Trial Agreement.
11. Defendant's Exhibits as stipulated to in the Pre-Trial Agreement by the parties consist of:
 a. Criminal Records of: John Simmons, James Deloach, Eric Gilliam, William Red Fuller and Stephan Cambell;
b. 2 June 1991 Incident Report by Robert Hines;
c. 2 June 1991 statement by Dorothy McDaniel;
d. 2 June 1991 statement of Katie Lewis;
 e. Diagram of Eastern Correctional Center Visitation Area.
******************
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff brought this action by filing a Form T-1 Affidavit with the North Carolina Industrial Commission in February 1994, claiming damages from a fall occurring on 2 June 1991.
2. The fall caused plaintiff's back and leg injuries which cost $1,686.07 for treatment and $911.18 for medication. Plaintiff had back problems prior to the 2 June 1991 incident.
3. In her affidavit plaintiff names the Superintendent of Eastern Correctional Center, Talmadge Barnett, as a negligent employee of defendant, North Carolina Department of Correction. Plaintiff did not present any evidence at trial regarding Mr. Barnett's actions, negligent or otherwise, or even his duties or responsibilities. Defendant filed an amended answer with the Industrial Commission in September 1994. In the answer, defendant denied any negligence, asserted that the plaintiff was contributorily negligent and moved to dismiss any assertions of intentional conduct in the plaintiff's affidavit.
4. Plaintiff, a retired Carolina Telephone employee, was a citizen of Pitt County at all relevant times. Plaintiff's son, William Freuler, was an inmate incarcerated at Eastern Correctional Center in Maury on the date of plaintiff's fall. Plaintiff was on her weekly Sunday visit, and she had visited her son almost every Sunday for the more than three years he had been incarcerated at the Eastern Correctional Center.
5. At around 9 a.m. and again at about 10:15 a.m. on 2 June 1991 while visiting her son, plaintiff walked to the visitation snack area which is located outside the actual visitation enclosure, is operated by the Greenville Jaycees and is staffed by inmates. Plaintiff took the same route to and from the visitation snack area each trip.
6. While returning from the snack area for the second time around 10:15 a.m. plaintiff slipped and fell to the floor. Plaintiff was wearing 1 1/2 inch heels and was carrying a soft drink for her son. Plaintiff noticed liquid on the floor after she fell but could not determine if it was water or the soft drink she had been carrying nor whether it was sticky, hot or cold. Plaintiff had noticed water on the floor in this area 3 or 4 weeks prior to this incident but did not see water before she fell or during her 9 a.m. trip to the snack area. In addition, none of the witnesses who testified on plaintiff's behalf noticed any liquid on the floor prior to her fall.
7. Stephan Campbell, who was incarcerated at the Eastern Correctional Center at the time, was present in the visitation area on the day plaintiff fell and viewed the incident. Mr. Campbell did not see any liquid on the floor area where plaintiff fell prior to her fall, although he did see liquid on the floor and on plaintiff's dress after she fell and spilled her drink. Also, Mr. Campbell testified that a nearby fire fighting hose with a history of leaking had a bucket beneath it to catch any leaks on the day of plaintiff's incident.
8. Eric Gilliam, who was incarcerated at Eastern Correctional Center in Maury, was working on the concession stand operated by the Greenville Jaycees and served plaintiff soft drinks both times she came to the stand that day and observed plaintiff fall. Mr. Gilliam did not see any liquid on the floor area where plaintiff fell prior to her fall, although he also saw liquid on the floor and on her dress after she fell and spilled her drink.
******************
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The terms of the North Carolina Tort Claims Act are to be strictly construed and adhered to. Etheridge v. Graham,Commissioner of Agriculture, 14 N.C. App. 551, 188 S.E.2d 551
(1972). The legislative intent must be ascertained from the North Carolina Tort Claims Act itself, and the rule of liberal construction cannot be applied to enlarge the scope of the Act.Alliance Co. v. State Hospital, 241 N.C. 329, 85 S.E.2d 386
(1955). For a recovery under the Tort Claims Act plaintiff is required to identify the employee alleged to have been negligent and set forth the specific negligent actions of the employee the claim is based upon. Ayscue v. N.C. State Highway Commission, 210 N.C. 100 [270 N.C. 100], 153 S.E.2d 823 (1967). Further, the Supreme Court requires that plaintiff's affidavit and evidence identify defendant's negligent employee and set forth the specific negligent acts upon which plaintiff's claim is based. Floyd v.N.C. State Highway and Public Works Commission, 241 N.C. 461,85 S.E.2d 703 (1955). In her affidavit plaintiff failed to describe the allegedly negligent actions of the named negligent employee of defendant, Talmadge Barnett. Furthermore, plaintiff failed to present any evidence at trial regarding the actions, negligent or otherwise, or the duties or responsibilities of defendant's allegedly negligent employee, Talmadge Barnett, and plaintiff's claim should thus be barred.
2. Assuming, arguendo, that plaintiff's suit is allowed to continue despite plaintiff failing to present any evidence regarding the named allegedly negligent employee, plaintiff still fails to carry her burden of proving the essential elements of negligence. Claims of tortious negligence against the State in the Industrial Commission forum are only allowed for ordinary negligence and are determined by the same rules applicable to private parties. Sasser v. Beck, 65 N.C. App. 170, 308 S.E.2d 722
(1983). Plaintiff has the burden to establish, beyond a mere speculation, every essential element of negligence. Id. The basic elements of negligence are a duty owed by defendant to plaintiff, nonperformance of that duty proximately causing plaintiff injury, and the injury or damage itself. Id. Regardless of whether plaintiff is classified as a licensee or an invitee on defendant's property to determine the level of duty owed plaintiff by defendant, there is no evidence in the record of negligence on defendant's part. No one, including plaintiff or her witnesses, saw water on the floor prior to plaintiff's fall. It is mere speculation that there was water and, thus, plaintiff fails to carry her burden.
******************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
ORDER
1. In view of the foregoing, plaintiff's claim is hereby and the same shall be DENIED.
2. Each side shall bear its costs.
This is the 22nd of August 1997.
 S/ ___________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ___________________________ COY M. VANCE COMMISSIONER
S/ ___________________________ LAURA K. MAVRETIC COMMISSIONER