ERIC THORNTON, PLAINTIFF v. F.J. CHERRY HOSPITAL AND NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, SELF-INSURED (KEY RISK MANAGEMENT, SERVICING AGENT), DEFENDANTS

No. COA06-1096

(Filed 15 May 2007)

1. **Tort Claims Act— injury in mental health hospital—findings—supported by evidence**

   In a Tort Claims action arising from an injury in a mental health hospital, the evidence supported the Industrial Commission's findings that the patients did not physically confront one another, physical threats were not made, and a staff member's actions comported with all of the hospital's procedures. Questions of credibility and weight remain in the province of the Commission.

2. **Tort Claims Act— injury in mental health hospital—staff's notice of threats against plaintiff**

   In a Tort Claims action arising from an injury in a mental health hospital, the Industrial Commission's unchallenged findings of fact supported its conclusion that plaintiff failed to prove that the Hospital had notice of alleged threats against plaintiff by other patients.

3. **Tort Claims Act— injury in mental hospital—conclusion of no negligence**

   The Industrial Commission did not err in a Tort Claims action arising from an injury in a mental hospital by concluding

that plaintiff had presented no evidence of employee negligence. N.C.G.S. § 143-297 requires that the claim set forth the name of the State employee upon whose alleged negligence the claim is based.

**4. Tort Claims Act— injury in mental health hospital—duty of care and breach of duty—not shown**

The plaintiff failed to prove that the duty of care owed to him was breached in a Tort Claims action arising from an injury in a mental health hospital from an attack on plaintiff by other patients.

**5. Tort Claims Act— injury in mental health hospital—contributory negligence**

In a Tort Claims action arising from an injury in a mental health hospital, the Industrial Commission's unchallenged findings of fact support its conclusion that plaintiff's provocation of the attack on him by other patients and his failure to notify staff members of alleged threats proximately caused his alleged attack and injuries.

Judge JACKSON dissenting.

Appeal by plaintiff from opinion and award entered 8 May 2006 by Commissioner Christopher Scott for the North Carolina Industrial Commission. Heard in the Court of Appeals 21 March 2007.

*Narron & Holdford, P.A., by Ben L. Eagles, for plaintiff-appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Amar Majmundar and Assistant Attorney General Laura J. Gendy, for defendants-appellees.*

TYSON, Judge.

Eric Thornton ("plaintiff") appeals from the opinion and award entered by the Full Commission of the North Carolina Industrial Commission ("the Commission") denying his claim under the Tort Claims Act. We affirm.

I.  Background

On 16 May 2000, plaintiff was involuntarily committed to F.J. Cherry Hospital ("Hospital") after he inflicted multiple lacerations

upon himself with a box cutter. Plaintiff's treatment records indicate he cut himself approximately twenty times about the head, chest, and legs in order to obtain a narcotic painkiller. That day, plaintiff also attempted to persuade Hospital Staff Member Ruth Maye, RN, ("Maye") that he had broken his right leg and needed narcotics for pain. No evidence suggested plaintiff's right leg was broken, and Maye did not provide any narcotics to plaintiff. Plaintiff also contacted his family and complained the Hospital would not provide him with narcotics and suggested he might run his head through glass in order to obtain narcotics. Hospital staff informed plaintiff they would not provide him narcotics.

On 17 May 2000, plaintiff continued to seek narcotics from Hospital staff. Plaintiff became irate, attempted to throw a wheelchair, and threatened to sue the Hospital for "poor health care." Plaintiff also told a nurse that his left knee was broken and that he needed narcotics. No evidence suggested plaintiff's left knee was broken. At approximately 3:15 p.m. that day, plaintiff and another patient engaged in a verbal confrontation. Hospital staff separated plaintiff and the patient pursuant to Hospital procedures. At approximately 4:00 p.m., a Hospital employee conducted a routine ward check. He observed plaintiff was awake and seated in the TV room.

At approximately 4:18 p.m., plaintiff became involved in an alleged physical altercation with other patients in the TV room. Plaintiff alleged an assailant struck him in the head while he was asleep in the TV room, and he fell out of his wheelchair. Plaintiff alleged the "whole ward" then "jumped" on him and an assailant stomped on his left leg, causing a fracture to his left tibia. Plaintiff changed his allegations before the Deputy Commissioner and stated he: (1) was struck in the head; (2) stood up to fight the assailants; (3) threw one assailant into the television; (4) threw a second assailant into a book shelf; and (5) continued to stand and fight as another assailant approached him from the side and kicked him in the left shin. Plaintiff testified no Hospital staff members were present in the ward, that all were on "break." Plaintiff presented no witnesses of the alleged attack.

At approximately 4:18 p.m., Hospital Staff Member Erthel Anderson ("Anderson") was located approximately ten to fifteen feet and Hospital Staff Member Ken Marsh was approximately twenty-five to thirty feet from the alleged altercation. Hospital Staff Member Rico Raynor was located approximately thirty to thirty-five feet away and Hospital Staff Member Nate Phillips was located approximately forty

to fifty feet away. Plaintiff presented for treatment and was diagnosed with a broken left tibia.

On 15 May 2002, plaintiff filed a claim for damages under the North Carolina Tort Claims Act against the Hospital and the North Carolina Department of Health and Human Services (collectively, "defendants"). Plaintiff alleged the physicians, nurses, and medical providers of the Hospital deviated from the standard of medical care for his treatment and their deviation proximately caused his injury. The Deputy Commissioner denied plaintiff's claim. Plaintiff appealed to the Full Commission, which affirmed the Deputy Commissioner's denial of his claim. Plaintiff appeals.

## II.  Issues

Plaintiff argues the Commission erred when it: (1) entered finding of fact numbered 8; (2) entered conclusions of law numbered 4, 5, 6, and 7; and (3) denied his claim under the Tort Claims Act.

## III.  Standard of Review

The standard of review under the Tort Claims Act is well settled. "[W]hen considering an appeal from the Commission, our Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision." *Simmons v. N.C. Dept. of Transportation*, 128 N.C. App. 402, 405-06, 496 S.E.2d 790, 793 (1998). "[C]onclusions of law are reviewable *de novo* on appeal." *Starco, Inc. v. AMG Bonding and Ins. Services*, 124 N.C. App. 332, 336, 477 S.E.2d 211, 215 (1996).

## IV.  Finding of Fact Numbered 8

[1] Plaintiff argues the Commission erred when it found that the patients did not physically confront one another, physical threats were not made, and Anderson's actions comported with all Hospital procedures. Finding of fact numbered 8 states:

8. At approximately 3:15 p.m. on May 17, 2000, Erthel Anderson, a Cherry Hospital staff member, observed the plaintiff and another patient in a verbal confrontation regarding cigarette smoking. Pursuant to Cherry Hospital procedure, Anderson separated the arguing patients, spoke to them individually, observed that the patients had settled and resolved the issue, and allowed the patients to proceed with their respective activities. At no time did the patients physically confront one another, nor

were physical threats made between the patients. The Full Commission finds that Anderson's actions comported with all Cherry Hospital procedures.

"The Industrial Commission's findings of fact are conclusive on appeal when supported by competent evidence . . . . even though there is evidence which would support findings to the contrary." *Bailey v. Dep't of Mental Health*, 272 N.C. 680, 683-84, 159 S.E.2d 28, 30-31 (1968). On appeal, this Court "does not . . . weigh the evidence [or] decide the issue on the basis of its weight. The Court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Anderson v. Construction Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965).

Questions of credibility and weight remain the province of the Commission, which may accept or reject all the testimony of a witness. *Lineback v. Wake County Board of Commissioners*, 126 N.C. App. 678, 680, 486 S.E.2d 252, 254 (1997). The Commission is "the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Melton v. City of Rocky Mount*, 118 N.C. App. 249, 256, 454 S.E.2d 704, 709, *disc. rev. denied*, 340 N.C. 568, 460 S.E.2d 319 (1995).

No record evidence shows plaintiff's verbal confrontation escalated into a physical altercation during the 3:15 p.m. confrontation. Plaintiff failed to recall any of the patients' names who allegedly threatened him. The Hospital's physician testified Anderson followed Hospital procedures when he separated plaintiff and the other patient after the verbal confrontation. Competent evidence supports the Commission's findings of fact that plaintiff presented no evidence tending to show a physical confrontation or threats of physical violence occurred around 3:15 p.m.

The Hospital's Nurse Manager testified Anderson acted in conformity with Hospital procedures in separating plaintiff and the other patient. Competent evidence in the record also supports the Commission's finding of fact that Anderson acted properly. This assignment of error is overruled.

### V. Conclusion of Law Numbered 4

[2] Plaintiff argues the Commission erred when it concluded he failed to prove the Hospital had notice of the alleged threats under conclusion of law numbered 4, which states:

4. Although the personnel at Cherry Hospital had a duty to care for the plaintiff during his involuntary commitment, the plaintiff has failed to prove a breach of that duty. Specifically, the plaintiff contends that he had repeatedly warned staff members about the threats made against him. Yet, there is no evidence in the record to support this contention. Therefore, the plaintiff has failed to prove that the defendant had notice of any alleged danger to him. Without said notice, the defendant cannot be held responsible for damages to the plaintiff. *See, Willis v. City of New Bern,* 137 N.C. App. 762, 529 S.E.2d 691 (2000). Further, the happening of an injury does not raise the presumption of negligence. *Smith v. Hickory,* 252 N.C. 316, 318, 113 S.E.2d 557, 559 (1960) (citation omitted). There must be evidence of notice either actual or constructive. *Id.*

We disagree.

Under the Tort Claims Act, "[t]he burden of proof [to show negligence is] on the plaintiff. Evidence is usually not required in order to establish and justify a finding that a party has failed to prove that which he affirmatively asserts. It usually occurs and is based on the absence or lack of evidence." *Bailey v. N.C. Dep't of Mental Health,* 2 N.C. App. 645, 651, 163 S.E.2d 652, 656 (1968). "Foreseeable injury is a requisite of proximate cause, which is, in turn, a requisite for actionable negligence." *Barefoot v. Joyner,* 270 N.C. 388, 393-94, 154 S.E.2d 543, 547 (1967). To prove forseeability, a plaintiff must show that the "defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected." *Williamson v. Liptzin,* 141 N.C. App. 1, 10, 539 S.E.2d 313, 319 (2000).

A "hospital, much like the proprietor of any public facility, owes a duty to its invitees to protect the patient against foreseeable assaults by another patient." *Sumblin v. Craven County Hospital Corp.,* 86 N.C. App. 358, 361, 357 S.E.2d 376, 378-79 (1987).

> All that the plaintiff is required to prove on the question of forseeability, in determining proximate cause, is that in the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected.

*Hart v. Curry,* 238 N.C. 448, 449, 78 S.E.2d 170, 170-71 (1953).

## THORNTON v. F.J. CHERRY HOSP.

[183 N.C. App. 177 (2007)]

A hospital is not required to take such inordinate precautions for its patients' safety to make it impractical for it to operate its business. *Hedrick v. Tigniere*, 267 N.C. 62, 67, 147 S.E.2d 550, 554 (1966). The duty a hospital owes its patients is to exercise reasonable or ordinary care to maintain, in a reasonably safe condition, that part of the hospital designed for the patients' use. *Samuel v. Simmons*, 50 N.C. App. 406, 408, 273 S.E.2d 761, 762, *cert. denied*, 302 N.C. 399, 279 S.E.2d 352-53 (1981). This duty imparts the additional duties owed to an invitee: the duty to warn the patient of hidden unsafe conditions and the duty to discover hidden unsafe conditions by reasonable inspection and supervision. *Jones v. Pinehurst, Inc.*, 261 N.C. 575, 578, 135 S.E.2d 580, 582 (1964). These duties are limited to unsafe conditions of which the hospital has notice. *Revis v. Orr*, 234 N.C. 158, 160, 66 S.E.2d 652, 654 (1951). It is only when the dangerous condition is known or should have known to a hospital that recovery is permitted. *Id.* at 160-61, 66 S.E.2d at 582.

Plaintiff failed to allege or present evidence to show the Hospital or its employees owed or breached any duty to protect him from harming himself. Plaintiff also failed to present any evidence the Hospital or its staff received notice of the threats to him. Plaintiff testified several people threatened him and that he told the staff members about these threats, but could not identify any source or person making the threats. After plaintiff received these threats, he walked into the ward's common TV room and fell asleep.

Hospital Nurse Supervisor Laura Rose testified no threats were reported by plaintiff. She testified that after plaintiff's 3:15 p.m. verbal confrontation, nothing indicated the patients were provoking each other. Hospital Nurse Manager Billy Tart also testified nothing showed the Hospital received any notice of the threats to plaintiff.

The Commission's uncontested findings of fact state:

D. A review of the plaintiff's records reveals that he made no comments or warnings to staff members about the impending violence against him. This absence of such a notation is significant, as it was Cherry Hospital policy to note such threats in the files of both the threatened patient and the threatening patient.

E. When questioned, the plaintiff was unable to name any of the staff members that he allegedly warned; was unable to describe the staff members he allegedly warned; was unable to specifically recall where or when he allegedly warned these staff members;

and was unable to specifically recall how many staff members he spoke to about the threats allegedly made against him.

F. The plaintiff testified that he was frightened by the alleged threats made against him; however, it appears that despite these threats, the plaintiff spent time in the day room where he felt comfortable enough to sleep, instead of seeking safety with staff members.

Plaintiff failed to prove he was threatened and presented no competent evidence to show any particular patients had threatened him, or that the Hospital received notice of these alleged threats. The Commission's unchallenged findings of fact support its conclusion that plaintiff failed to prove the Hospital had notice of the alleged threats. This assignment of error is overruled.

### VI. Conclusion of Law Numbered 5

[3] Plaintiff argues the Commission erred when it concluded he presented no evidence of employee negligence. We disagree. Conclusion of law numbered 5 states:

5. In his Affidavit, the plaintiff named Mangaraju Kolluru, MD, Hoda Eskander, MD, Robert Ownes, MD, R. Maye, RN, Rose Malpass, RN, Dennis Harris, PA-C, and V. Srikantha, PA, as the alleged negligent employees. The plaintiff presented no evidence of negligence on the part of these individuals, and therefore his claim must fail. *See,* N.C. Gen. Stat. § 143-291, *see also, Ayscue v. Highway Commission,* 270 N.C. 100, 103, 153 S.E.2d 823 (1967).

N.C. Gen. Stat. § 143-297 (2005) provides that a claim must be accompanied by an affidavit in duplicate, setting forth among other things, the name of the Department, Institution, or Agency of the State of North Carolina against which the claim is asserted and the name of the State employee upon whose alleged negligence the claim is based.

The purpose of requiring the claimant to specify the name of the State employee whose alleged negligent act caused the injury is to enable the State or Department to properly investigate the employee designated, to ascertain the facts of the claimant's alleged acts of negligence, and to present evidence or be heard with respect thereto. *Floyd v. Highway Commission,* 241 N.C. 461, 464, 85 S.E.2d 703, 705 (1955). In order to recover under the Tort Claims Act, the claimant's

affidavit must set forth the name of the allegedly negligent employee and the acts of negligence relied upon. *Crawford v. Wayne County Board of Education*, 3 N.C. App. 343, 346, 164 S.E.2d 748, 750 (1968), *aff'd*, 275 N.C. 354, 168 S.E.2d 33 (1969).

Plaintiff alleged in his affidavit that Mangaraju Kolluru, MD, Hoda Eskander, MD, Robert Ownes, MD, R. Maye, RN, Rose Malpass, RN, Dennis Harris, PA-C, and V. Srikantha, PA were negligent. Plaintiff's testimony contradicted his affidavit. Plaintiff testified he did not mean to "blame" these specific people, that whomever was on duty was at fault, and that he did not know those individual's specific names. Plaintiff testified that the Hospital staff was generally negligent, not any of these individuals specifically. No record evidence shows plaintiff proved any of these individuals were negligent.

The Commission's uncontested findings of fact show:

H. The plaintiff could not name a single member of the Cherry Hospital staff that was negligent. When asked at trial, the plaintiff admitted that he had no evidence that the staff "were not where they were supposed to be."

. . . .

22. Billy Tart, a nurse manager, testified that the staff acted appropriately and within Cherry Hospital procedures.

. . . .

26. The plaintiff offered no evidence proving that acts or omissions of Cherry Hospital staff proximately caused his injuries. The plaintiff specifically failed to provide evidence that the named employees committed any acts or omissions that would constitute negligence.

The Commission's unchallenged findings of fact show plaintiff presented no evidence that any Hospital employee was negligent. These findings of fact support the Commission's conclusion that "plaintiff presented no evidence of negligence on the part of these individuals, and therefore his claim must fail." This assignment of error is overruled.

## VII. Conclusion of Law Numbered 6

[4] Plaintiff argues the Commission erred when it concluded he failed to show the level of care owed to him. We disagree.

Conclusion of law numbered 6 states:

6. The plaintiff failed to provide any expert testimony to support his allegations that the staff at Cherry Hospital failed to conform to an accepted standard of care or to industry standards. Without such evidence, the plaintiff cannot even show the level of care that was owed to him. Without evidence or expert opinion of that duty owed, the plaintiff cannot, therefore, prove a breach of the duty owed to him.

"The elements of a cause of action based on negligence are: a duty, breach of that duty, a causal connection between the conduct and the injury and actual loss." *Davis v. N.C. Dept. of Human Resources*, 121 N.C. App. 105, 112, 465 S.E.2d 2, 6 (1995). "A duty is defined as an obligation, recognized by the law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Id.* "A breach of the duty occurs when the person fails to conform to the standard required." *Id.* Under the Tort Claims Act, "[t]he burden of proof [to show negligence rests] on the plaintiff." *Bailey v. North Carolina Department of Mental Health*, 2 N.C. App. 645, 651, 163 S.E.2d 652, 656 (1968).

The general rule places no duty to protect others against harm from third persons. *King v. Durham County Mental Health Authority*, 113 N.C. App. 341, 345, 439 S.E.2d 771, 774, *disc. rev. denied*, 336 N.C. 316, 445 S.E.2d 396 (1994). A recognized exception, however, exists where a person has been involuntarily committed for a mental illness, in which case there is a duty on the institution to exercise control over the patient with such reasonable care as to prevent harm to others at the hands of the patient. *Pangburn v. Saad*, 73 N.C. App. 336, 338, 326 S.E.2d 365, 367 (1985).

Plaintiff failed to proffer any evidence tending to show a duty the Hospital owed to him, or that the Hospital breached that duty. Plaintiff's only witnesses were himself, Hospital physician Dennis Harris, Hospital Nurse Supervisor Laura Rose, and Hospital Staff Supervisor Billy Tart.

The Commission's uncontested findings of fact numbered 10 and 13 state:

10. At approximately 4:00 p.m. on May 17, 2000, Nate Phillips conducted a routine check of the ward, which included the day room where the plaintiff sat. It was noted by Phillips that at 4:00 p.m., the plaintiff was awake, watching television. Phillip's ac-

tions of checking the day room were part of the normal, standard operating procedures of Cherry Hospital.

. . . .

13. At the time of the alleged attack, four staff members were on the ward. This number of staff members was double the minimum staffing requirements.

Competent evidence in the record shows all four staff members were located between ten to fifty feet away from plaintiff. Plaintiff failed to prove the duty of care owed to him was breached. Instead, plaintiff and the witnesses he presented testified Hospital staff either satisfied or exceeded procedural requirements and standard of care. This assignment of error is overruled.

### VIII. Conclusion of Law Numbered 7

[5] Plaintiff argues the Commission erred when it concluded his claim is barred by contributory negligence. We disagree. Conclusion of law numbered 7 states:

7. Even if it can be assumed that the defendant breached a duty to the plaintiff, his claim, nevertheless, is barred as he contributed and proximately caused his injuries when he provoked other patients; failed to notify staff of the alleged threats made against him; and put himself in a position to be attacked.

In order to sustain an award under the Tort Claims Act, a claimant must show not only injury resulting from a designated employee's negligence, but must also prove that the claimant was not guilty of contributory negligence. *Floyd*, 241 N.C. at 465, 85 S.E.2d at 706.

The Commission's uncontested findings of fact show:

11. Prior to the attack, it was noted that the plaintiff had provoked other inmates on the ward, even daring them to strike him.

. . . .

20. Dennis Harris, employed by Cherry Hospital as a Physician-Extender II, testified that he arrived at the ward soon after the alleged attack upon the plaintiff. Harris indicated that although the plaintiff initially claimed that the whole ward jumped on him without provocation, the plaintiff later admitted his role in provoking the attackers.

The Commission's unchallenged findings of fact support its conclusion that plaintiff's provocation of the attack and his failure to notify Hospital staff members of the alleged threats, proximately caused his alleged attack and injuries. Plaintiff admitted his role in provoking an alleged attack. This assignment of error is overruled.

## IX. Commission's Denial of Plaintiff's Claim

Plaintiff's final argument broadly states the Commission erred when it denied his claim under the North Carolina Tort Claims Act. Plaintiff failed to demonstrate the Commission's findings were unsupported by any competent evidence. Plaintiff also failed to show the findings of fact did not support the Commission's conclusions of law. This assignment of error is dismissed.

## X. Conclusion

Competent evidence in the record supports the Commission's finding of fact that no physical confrontation and physical threats occurred and that Anderson's actions comported with Hospital procedures during plaintiff's 3:15 p.m. verbal confrontation. The Commission properly concluded: (1) plaintiff failed to prove the Hospital had notice of the alleged threats; (2) plaintiff presented no evidence of negligent conduct by any employee; (3) plaintiff failed to show the level of care the Hospital owed to him; and (4) plaintiff's claim was barred by contributory negligence. Plaintiff failed to demonstrate the Commission's findings were unsupported by competent evidence. Plaintiff failed to show the Commission's findings of facts did not support its conclusions of law. The Commission's 8 May 2006 opinion and award is affirmed.

Affirmed.

Judge HUNTER concurs.

Judge JACKSON dissents by separate opinion.

JACKSON, Judge dissents.

For the reasons stated below, I must respectfully dissent from the majority's conclusion that plaintiff failed to establish that the defendant Hospital breached a duty owed to plaintiff and that plaintiff was contributorily negligent. I would hold that defendant did in fact owe a duty of care to plaintiff, which was breached when defendant failed

to take reasonable precautions to protect plaintiff from causing harm to himself. I also would hold that plaintiff's claim is not barred by contributory negligence, as the reasonable person standard should not be applied to an individual who has been involuntarily committed to a psychiatric hospital due to mental illness. Therefore, I would reverse the opinion and award of the Full Commission.

The majority states that not only does a hospital "owe[] a duty to its invitees to protect the patient against foreseeable assaults by another patient[,]" *Sumblin v. Craven County Hospital Corp.*, 86 N.C. App. 358, 361, 357 S.E.2d 376, 378-79 (1987), but that the hospital should not be required to take such inordinate precautions for patients' safety, which would make it impractical for the hospital to operate. In the instant case, the majority agrees with the Full Commission in holding that plaintiff failed to present any evidence that the hospital or its staff received notice of threats to plaintiff. I disagree.

Plaintiff, having been involuntarily committed, cannot be considered an invitee in the truest sense of the word. *See Nelson v. Freeland*, 349 N.C. 615, 617, 507 S.E.2d 882, 883 (1998) ("An invitee is one who goes onto another's premises in response to an express or implied invitation and does so for the mutual benefit of both the owner and himself."). Plaintiff was not a typical patient in a typical medical hospital—he had been involuntarily committed to a psychiatric hospital due to his acts of self-mutilation and drug seeking behaviors. Following his admission to the hospital, based upon his acts of self-mutilation, plaintiff had an altercation with another patient, and he made repeated threats to harm himself or other patients. The hospital clearly was on notice that plaintiff had both the intention and capability to harm himself, and that he likely would take action, or cause events, which would lead to his being injured in order to be given narcotics.

Although a hospital, as that in *Sumblin*, may owe a duty to protect a patient from foreseeable assaults by other patients, this duty also should extend to protecting a patient, who is predisposed to harming himself, from actually harming himself along with others. While defendant hospital may not have received reports of actual threats being directed towards plaintiff, the hospital staff did have notice that prior to the attack, plaintiff had verbally confronted another patient, he had provoked other patients even daring to strike them, and that he was taking a variety of actions in order to obtain the narcotics. The Commission's own unchallenged findings

indicate as much. Thus, it was reasonably foreseeable that plaintiff would cause an altercation with fellow patients which would result in his being injured.

Therefore, I would hold the hospital owed plaintiff a duty of reasonable care to protect him from causing injury to himself.

The majority properly states the general rule that there is no duty to protect someone from harm caused by third persons. *King v. Durham County Mental Health Authority*, 113 N.C. App. 341, 345, 439 S.E.2d 771, 774, *disc. review denied*, 336 N.C. 316, 445 S.E.2d 396 (1994). The exception to the rule, which is applicable to the instant case, provides that "there is a duty 'upon the actor to control the third person's conduct,' and 'to guard other persons against his dangerous propensities[]' " when one of five special relationships exists. *Id.* at 345-46, 439 S.E.2d at 774 (citations omitted). When an individual has been involuntarily committed to a state hospital, that hospital owes a duty of care to the public to protect them from harm caused by the involuntarily committed individual. *Davis v. N.C. Dept. of Human Resources*, 121 N.C. App. 105, 112, 465 S.E.2d 2, 7 (1995), *disc. review denied*, 343 N.C. 750, 473 S.E.2d 612 (1996); *see also King*, 113 N.C. App. at 346, 439 S.E.2d at 774; *Pangburn v. Saad*, 73 N.C. App. 336, 338, 326 S.E.2d 365, 367 (1985). The majority erroneously holds that plaintiff failed to show that defendant owed a duty of care to plaintiff, or that defendant breached that duty.

In order to impose liability upon a defendant for a breach of a duty owed in the type of relationship found in the instant case, defendant must have had both " '1) the ability to control the person and 2) knowledge of the person's propensity for violence.' " *King*, 113 N.C. App. at 346, 439 S.E.2d at 774 (quoting *Abernathy v. United States*, 773 F.2d 184, 189 (8th Cir. 1985)). I would hold that both factors are present in this case. The holdings in *Davis* and *King* set forth a duty to prevent harm to third persons at the hands of the involuntarily committed patient. Following the logical progression of this holding leads to an extension of this duty to protect patients who have been involuntarily committed, based specifically upon their being a danger to themselves, from causing self-harm. When a patient has been involuntarily committed, specifically because he has been found to be a danger to himself, the hospital is obligated to exercise control over the patient with such reasonable care as to prevent injury to himself at his own hands. To hold otherwise would negate the reason for such a commitment in the first place.

Plaintiff came to the hospital after exhibiting serious self-harming behaviors, and he continued to exhibit similar behaviors following his commitment. He not only told hospital staff that he was going to run his head through glass, but he also provoked other patients on several occasions both verbally and physically, and once attempted to throw a wheelchair after becoming angry. All of plaintiff's actions were in an effort to convince the staff that he was injured and in need of narcotics. As in *Davis* and *King*, if there is a duty to protect third persons from harm, then the duty should be extended to protect the patient himself from self-harm, particularly when the very purpose of his involuntarily commitment is for this exact reason. If a hospital such as defendant does not have a duty to protect plaintiff from injuring not only third persons, but also himself, then there would be no purpose in involuntarily committing a individual who poses a danger to himself.

> The primary purpose of an involuntary commitment proceeding is to protect the person who, after due process, has been found to be both mentally ill and imminently dangerous, by placing such a person in a more protected environment where the danger may be minimized and his treatment facilitated; in a real sense the proceeding is an important step in his medical and psychiatric treatment.

*Gregory v. Kilbride*, 150 N.C. App. 601, 610, 565 S.E.2d 685, 692 (2002). Thus, upon being involuntarily committed, defendant had control over plaintiff and the burden of protecting plaintiff fell upon defendant.

I would hold that the hospital was well aware of the basis for plaintiff's involuntary commitment, his actions following his commitment, and of his determination to injure himself in order to obtain narcotics. Based upon this notice, the hospital failed to take reasonable precautions to prevent plaintiff from injuring himself or being injured by other patients as a result of his provocation. The hospital had available to it several escalating levels of intervention, including seclusion, *see* N.C. Gen. Stat. § 122C-60 (2005); 10A NCAC 28D .0203 (June 2006), however no precautions were taken other than to separate plaintiff from the patient with whom he had a verbal confrontation. Following that altercation and his previous threats to strike other patients, plaintiff was then permitted to roam freely in the TV ward with fellow patients.

IN RE J.S.B., D.K.B., D.D.J., Z.A.T.J.

[183 N.C. App. 192 (2007)]

The hospital owed plaintiff a duty to protect him from harm. 10A NCAC 28C .0101(a) (June 2006); *see* N.C. Gen. Stat. § 122C-66 (2005). Plaintiff presented sufficient evidence to establish that defendant owed a duty of care to him, and that defendant breached this duty by failing to take reasonable care to protect plaintiff from causing harm to himself.

Finally, I would hold that any role plaintiff may have had in provoking the other patients, and placing himself in a position to be attacked, does not constitute a bar to his claim of negligence.

"[C]ontributory negligence consists of conduct which fails to conform to an objective standard of behavior—the care an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury." *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 673, 268 S.E.2d 504, 507 (1980) (citations and quotations omitted). "The standard by which contributory negligence is judged is that of a reasonable person. Our Supreme Court has stated, 'the question is not whether a reasonably prudent person would have seen the [defect,] . . . but whether a person using ordinary care for his or her own safety under similar circumstances[.]' " *Nelson v. Novant Health Triad Region*, 159 N.C. App. 440, 445, 583 S.E.2d 415, 418 (2003) (quoting *Norwood v. Sherwin-Williams Co.*, 303 N.C. 462, 468, 279 S.E.2d 559, 563 (1981)). Thus, while plaintiff admits his role in provoking the attack, it defies logic to hold that an individual who has been involuntarily committed due to mental illness can be considered a "reasonable person." Plaintiff was involuntarily committed because he was a danger to himself and because he was incapable of acting as a reasonable person. Thus, I believe that to hold plaintiff to the standard of a "reasonable person" or an "ordinarily prudent person" is improper, and his actions should not bar his claim of negligence.