CULLEN BUNN BAILEY, JR. v. NORTH CAROLINA DEPARTMENT OF
MENTAL HEALTH

No. 6810IC364

(Filed 23 October 1968)

**1. Master and Servant § 98;    State § 10——    Tort Claims Act —— proceedings after remand to Industrial Commission**

Upon remand by the Supreme Court to the Industrial Commission of plaintiff's tort claim action on the ground that the Commission's findings of fact were not supported by the evidence, the Industrial Commission did not abuse its discretion in denying plaintiff's motion to introduce additional evidence, since the judgment of the Supreme Court did not order a trial *de novo* but instead directed that the Commission consider the evidence in the case in its true legal light and make findings of fact thereon.

**2. Master and Servant § 98——    proceedings after remand to Industrial Commission —— introduction of additional evidence**

Upon remand of an action to the Industrial Commission on the ground that the Commission's findings of fact are not supported by the evidence, the Commission has the discretion, upon a proper showing, to order the taking of additional evidence.

**3. State § 5——    nature of Tort Claims Act**

In a suit against the State for an alleged tort, plaintiff cannot complain when the State requires him to follow certain procedural rules before its consent is given to waive its sovereign immunity.

**4. Master and Servant § 47——    construction of Workmen's Compensation Act**

The Workmen's Compensation Act should be liberally construed.

**5. State § 5——    construction of Tort Claims Act**

The State Tort Claims Act, being in derogation of the sovereign immunity from liability for torts, should be strictly construed and should be followed as written.

**6. State § 8——    action under Tort Claims Act —— sufficiency of evidence to show negligence**

In plaintiff's action under the State Tort Claims Act for damages allegedly incurred as a result of a State hospital's negligence in administering shock treatments, the evidence is sufficient to support the Industrial Commission's findings of fact that (1) the hospital's physician was not negligent in his treatment of the plaintiff during the shock treatments and that (2) the plaintiff was unable to remember what occurred during the treatment complained of since he was under the influence of sedatives.

**7. State § 8——    Tort Claims Act —— burden of proof**

On appeal in proceeding under the Tort Claims Act, plaintiff has the burden to show that the Industrial Commission erred in finding and concluding that a doctor, who was a State employee, was not negligent in his treatment of plaintiff.

PLAINTIFF appealed from the North Carolina Industrial Commission Decision and Order filed 7 May 1968.

Action by claimant, hereinafter sometimes referred to as plaintiff, under the State Tort Claims Act, G.S. 143-291, *et seq.*, for recovery of damages for the alleged negligence on the part of the North Carolina Department of Mental Health in the administering. of shock treatment to the plaintiff, Cullen Bunn Bailey, Jr.

For a summary of the facts in the case, see the opinion in this case entitled *Bailey v. Dept. of Mental Health,* 272 N.C. 680, 159 S.E. 2d 28.

There was a full hearing before Chairman Bean of the Industrial Commission on 4 May 1966, at which time evidence was presented by the plaintiff. Chairman Bean filed a Decision and Order of 11 May 1966 denying the relief sought. On 13 May 1966, plaintiff appealed to the Full Commission and was heard upon appeal, and the Full Commission affirmed the earlier Order and Decision, on 25 July 1966. Plaintiff gave notice of appeal to the Superior Court on 25 August 1966. The appeal came on for hearing before Judge H. L. Riddle, Jr., at the May 1967 Session of the Superior Court of Wake County, at which time Judge Riddle ruled that the Industrial Commission erred as a matter of law, vacated the judgment of the Commission and remanded the cause for such rehearing as may be necessary to conform the findings of fact and conclusions of law to the record, and directed that additional evidence be taken. To the judgment and order of Judge Riddle, the defendant excepted and gave notice of appeal to the Supreme Court of North Carolina.

On 2 February 1968 the Supreme Court of North Carolina filed its opinion (272 N.C. 680) holding that the findings of fact by the Industrial Commission were insufficient to enable the court to determine the rights of the parties and remanding the case to the Industrial Commission for proper findings. The North Carolina Supreme Court further held that Judge Riddle exceeded the authority of a reviewing court by ordering that additional evidence be taken at a rehearing of the matter.

Plaintiff then filed a motion before the Industrial Commission requesting that the Commission hear additional evidence in the cause. Motion was argued by counsel for both plaintiff and defendant and the Full Commission denied the motion to allow additional evidence. Upon remand the Full Commission vacated and expunged from its records the Decision and Order filed by Chairman Bean on 11 May 1966, and without further hearing of evidence substituted in

its place the Order and Decision of the Full Commission filed on 7 May 1968, which Order denied the relief sought by plaintiff. To the denial of his claim and the filing of the Decision and Order of the Full Commission, the plaintiff excepted and gave notice of appeal to the Court of Appeals of North Carolina.

*Douglas F. DeBank for plaintiff appellant.*

*Attorney General T. W. Bruton and Staff Attorney L. Philip Covington for defendant appellee.*

MALLARD, C.J.

[1] Plaintiff contends that the Full Commission committed reversible error in refusing to permit the introduction of additional evidence after this case was remanded by the Supreme Court.

In the opinion of the Supreme Court by Branch, J., (272 N.C. 680), the court said:

"The Industrial Commission's findings of fact are conclusive on appeal when supported by competent evidence, except for jurisdictional findings. This is true, even though there is evidence which would support findings to the contrary. *Mica Co. v. Board of Education,* 246 N.C. 714, 100 S.E. 2d 72; *Teer Co. v. Highway Commission,* 265 N.C. 1, 143 S.E. 2d 247. However, where facts are found or where the Commission fails to find facts under a misapprehension of law, the court will, where the ends of justice require, remand the cause so that the evidence may be considered in its true legal light." *Bailey v. Dept. of Mental Health, supra.*

A careful reading of the opinion of the Supreme Court reveals that the findings of fact theretofore found by the hearing commissioner and affirmed by the Full Commission were not supported by the evidence. The judgment rendered thereon was vacated so that the evidence may be considered in its true legal light. The Supreme Court in remanding the case also said:

"The judgment is vacated and the cause is remanded to the Superior Court of Wake County with direction that it be remanded to the North Carolina Industrial Commission for further consideration, to the end that the Commission may proceed with findings of fact and a determination of the rights of the parties in accord with the principles herein enunciated." *Bailey v. Dept. of Mental Health, supra.*

The North Carolina Industrial Commission was to further consider the matter to the end that the Commission might proceed with

findings of fact and a determination of the rights of the parties. A trial *de novo* was not ordered. The Supreme Court did not order a *new trial* before the Industrial Commission. The Industrial Commission was not directed to take additional evidence, nor was it denied the authority to take additional evidence.

[2]    We are of the opinion and so decide that the Industrial Commission could have, upon a proper showing, and in its discretion, ordered additional evidence to have been taken. It did not do so and on this record no abuse of discretion is shown for failing to do so. *McCulloh v. Catawba College*, 266 N.C. 513, 146 S.E. 2d 467; *Hall v. Milling Co.*, 1 N.C. App. 380, 161 S.E. 2d 780.

[3]    The Legislature has made the procedure in hearings before the Industrial Commission different from the procedures in the Superior Court. In a suit against the State for an alleged tort, the plaintiff cannot complain when the State requires him to follow certain procedural rules before its consent is given to waive its sovereign immunity.

Plaintiff also in his brief, after citing *McFarlane v. Wildlife Resources Commission*, 244 N.C. 385, 93 S.E. 2d 557, asserts and contends that "had this action against the State of North Carolina been pending and tried in the Superior Court systems of this State, upon remand by the Supreme Court, the case would have begun anew."

In his contentions, plaintiff overlooks what the Supreme Court did; it *did not* reverse a judgment of nonsuit. Plaintiff complains because his case was required to be tried by the same fact finding body on the same evidence. The Legislature required him to submit his controversy to this particular fact finding body, the Industrial Commission. He cannot complain about the "jury" or fact finding body being selected for him by the State, for if the State had not waived its immunity and provided some tribunal, the plaintiff would have had no forum at all in which to present his claim. Every person similarly situated is required to submit his cause to this same "jury" or fact finding body.

Plaintiff contends that he should have been permitted to introduce further evidence and, in support thereof, offered to the Industrial Commission an unverified written motion signed by his attorney. In this motion, it is said, among other things:

"In support of this request the Plaintiff would show unto the Commission that at the time of the original hearing on this claim held before J. W. Bean, Chairman of the North Carolina Industrial Commission on May 4th, 1966, there were in fact witnesses

present at the trial, completely unbeknown to the Plaintiff, who could have aided substantially in the proof and presentation of the Plaintiff's claim. The Plaintiff and his Counsel knew of these witnesses but were totally unable prior to the trial to determine their residence or whereabouts and were also unable to recognize said witnesses in person. That the Plaintiff and his Counsel therefore did not know that several key witnesses had been subpœnæd by the State and were in fact present in the courtroom on the date of the original hearing.

That the Plaintiff is particularly referring to the presence at said original hearing of Dr. William Frierson, the physician who administered the shock treatment as well as one or two of the people who assisted Dr. Frierson on the date the injury was incurred by the Plaintiff. These people were subpœnæd by the State as witnesses for the State, however, the State did not offer any evidence at the hearing. It is the Plaintiff's contention that these particular witnesses, had their presence been known by the Plaintiff or had they been subjected to cross-examination, would have contributed substantially to the proof of the Plaintiff's claim."

It is observed that this motion was not sworn to and thus does not comply with even the initial requirement as set out in *Bailey v. Dept. of Mental Health, supra,* for the admission of *newly discovered* evidence. The Supreme Court had reversed the order of the Superior Court *requiring* the taking of additional evidence. We are of the opinion that the plaintiff was not entitled as a matter of law to introduce additional evidence in this case after it was ruled on by the Supreme Court, and that the Industrial Commission did not commit error in refusing to allow plaintiff's motion to offer additional evidence.

[4, 5]   There are many differences in procedure in cases brought under the Workmen's Compensation Act and those brought under the State Tort Claims Act. The Workmen's Compensation Act should be liberally construed. *Hall v. Milling Co., supra.* The Supreme Court held in *Floyd v. Highway Commission,* 241 N.C. 461, 85 S.E. 2d 703 (1955), with Parker, J. (now C.J.), dissenting, that the State Tort Claims Act is in derogation of thé sovereign immunity from liability for torts and the better view is that the act should be strictly construed and the act should be followed as written.

[6]   Plaintiff contends that the Full Commission committed error in finding "(t)hat the plaintiff was under sedation at the time of the electric shock and did not recall anything that happened."

The finding is a rather broad one and does not specifically state to which electric shock reference is made. The plaintiff had testified in substance that he didn't know, but others had told him he had taken 37 electric shocks. However, in the finding by the Commission immediately preceding this one complained of, reference is made to the shock treatment on 3 December 1963.

In the transcript of the evidence, the plaintiff states in substance that shock treatments were usually given in the morning, and specifically states that on the evening of 3 December 1963 he was given a shock treatment and the only medication he received was a saliva shot and that he did not receive any medication which relaxed or paralyzed his body. The plaintiff then related the details of how the shock treatment was given and the following occurred:

"Q. Had Dr. Frierson ever administered a shock treatment to you before?

A. No, this was the first one.

I will describe what the procedure is when I receive an electric shock treatment. They lock you in a room with a lot of the rest of them. They give you a saliva shot and take you upstairs and put you in seclusion and you prepare for it the best way you know how, and they take you by the seat of your breeches and put on the table. The doctor stands behind you I guess. You never know when the shock treatment will begin.

Q. In what fashion are your limbs restrained?

A. Well, it scares me to even talk about them now, but they are very rigid.

They had to hold me on the table every time they got me in there because I was afraid, very much afraid. I prepared to die, so to speak.

Q. Had you ever had any fracture or injury to your body previous to that time in an electric shock treatment case?

A. No.

MR. BROWN: Objection.

THE COURT: I will let him answer for the record.

Q. (Mr. DeBank) Did you ever receive a fracture of your vertebra or your spine?

A. No, I didn't know I had one.

I don't remember getting an electrocardiogram at Dorothea Dix. I had one at Duke, but I don't remember getting one at

Dorothea Dix at all. My blood pressure was taken the morning they called it off that evening, after I had already eaten. I thought I had a reprieve, so to speak. I do not of my own knowledge have any knowledge why it was called off that morning. All I know, they came in and took my blood pressure. Didn't take nothing else.

I don't remember what my next independent recollection is. It's been so long I don't accurately remember. I remember coming to, saying 'Please don't hurt me no more.' I came to in the seclusion room that I was in prior to the shock treatment. I was in the seclusion room. A doctor was standing over me.

Q. Who was the doctor?

A. Dr. Frierson, and he asked me where I hurt and I didn't know where I hurt at that time, and finally after I come out of it, they took me out on an ambulance and took an X-ray."

From the above which appears on pages 16 and 17 of the record, the Commission apparently found that the plaintiff contradicted himself and actually didn't remember what occurred from the time they took his blood pressure one morning until after he came to in a seclusion room with Dr. Frierson standing over him, and the Commission could have found from the circumstances testified to that the reason he didn't was because of some sedatives given him. We are of the opinion that in making this finding, the Full Commission did not commit prejudicial error.

[6, 7]    Plaintiff contends that the Full Commission committed error in finding and concluding that Dr. William Frierson, employee of the defendant, was not negligent in his treatment of the plaintiff. The burden of proof as to this issue was on the plaintiff. Evidence is usually not required in order to establish and justify a finding that a party has failed to prove that which he affirmatively asserts. It usually occurs and is based on the absence or lack of evidence. After having carefully read the evidence in the record, we conclude that the findings of fact by the Full Commission on which its final conclusions are based are supported by the evidence, and we are bound thereby. We are also of the opinion that the conclusions of the Commission are proper. We do not reach, or decide, the question of whether the doctrine of *res ipsa loquitur* applies in actions brought under the State Tort Claims Act, G.S. 143-291, *et seq.*

The Decision and Order of the Full Commission entered herein on 7 May 1968 are

Affirmed.

CAMPBELL and MORRIS, JJ., concur.