***********
Having reviewed the competent evidence of record the Full Commission modifies the Deputy Commissioner's Decision and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement and at the evidentiary hearing as
 STIPULATIONS
1. This claim is filed pursuant to the North Carolina Tort Claims Act.
2. The North Carolina Wildlife Resources Commission (hereinafter NCWRC) is an agency of the State of North Carolina.
3. The boat accident occurred on May 9, 1999.
4. Linda Guedalia was at all relevant times an employee and agent of the North Carolina Wildlife Resources Commission, acting in the course and scope of her employment as a Wildlife Enforcement Officer.
5. The cost to repair the claimants' boat was $9,507.08.
6. The cost to repair the defendant's boat was $500.00.
7. Defendant paid Officer Guedalia $430.00 in salary continuation due to the accident and medical expenses of $1,148.35 under the provisions of the North Carolina Workers' Compensation Act.
8. The parties stipulated Plaintiff's 14-U.S. Coast Guard Inland Navigation Rules into evidence at the hearing.
9. The issues for determination are:
a. Was defendant's named employee, Linda Guedalia, negligent?
b. Was plaintiff Paul Sprinkle contributorily negligent?
 c. Were claimants Paul Sprinkle and Carla Jones damaged by the negligence of defendant's employee, and if so, in what amount?
 d. If Paul Sprinkle and Linda Guedalia are both found to be negligent, are they jointly and severely liable for damages sustained by Carla Jones?
 e. If Linda Guedalia was negligent, is defendant entitled to contribution from plaintiff Sprinkle for the damages of plaintiff Jones?
 f. If Paul Sprinkle was negligent and Linda Guedalia was not, to what amount of damage, if any, is defendant entitled to recover from plaintiff Sprinkle?
 ***********
Based upon the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On February 11, 1999, claimants purchased a 1999 Baja H2X boat from Carolina Marina in Mount Mourne, North Carolina. The purchase price for the boat was $45,252.00, plus $2,000.00 for the trailer.
2. On May 9, 1999, Officer Guedalia was operating a sixteen-foot McKee Craft boat, which had a top speed of forty-five miles per hour.
3. On May 9, 1999, claimants were boating on High Rock Lake in Rowan County, North Carolina. There was no speed limit on the lake, other than restrictions at no wake areas. The Coast Guard Navigation Rules for Inland Steering and Sailing were applicable to this body of water.
4. Officer Guedalia and Officer Keith Voris were each sitting stationary in their respective patrol boats in the main channel of High Rock Lake. They were facing in opposite directions as they discussed stopping two white boats for boating inspection. As the two white boats approached, Officer Voris started his patrol boat to pursue the first white boat, which was operated by Brian Jones (brother of claimant Carla Jones Sprinkle). Both the Sprinkle boat and the Jones boat were turning right into Dutch Second Creek from the main channel at High Rock Lake.
5. Officer Guedalia started her boat to pursue the Sprinkle boat. The Voris patrol boat and the Jones boat had passed a distance of approximately three hundred yards ahead, in the same direction. Officer Guedalia opened her boat to full throttle to turn and pursue the Sprinkle boat, which was a distance of seventy-five yards away. The Guedalia patrol boat was to the port side of the Sprinkle boat.
6. The Sprinkle boat was traveling at a constant rate of speed of fifty to sixty miles per hour and was turning from the main channel to the right into Dutch Second Creek. As Mr. Sprinkle rounded a small island in the channel, he saw Officer Guedalia's boat with its blue light flashing. When he heard the siren, Mr. Sprinkle put his boat in neutral to reduce the speed and slowed his boat to a full stop, dead in the water. Mr. Sprinkle did not turn his boat to the left into Officer Guedalia's path. However, it is possible that due to the boat's momentum or the movement of the water, particularly since Brian Jones and Officer Voris had passed in the same direction about three hundred yards ahead, may have caused some additional movement of the boat. However, as Officer Guedalia was trailing the Sprinkle boat, she was in the best position to avoid a collision by reducing her speed and/or altering her path.
7. As Mr. Sprinkle made a right turn into the cove, Officer Guedalia hit her siren. She observed plaintiff's boat decrease speed and stated that it moved to the left. She was at that point a distance of approximately twenty yards from the Sprinkle boat. Despite seeing the direction in which plaintiff's boat was moving, Officer Guedalia cut her boat hard to starboard and slammed the throttle in reverse. The patrol boat then collided with the Sprinkle boat.
8. The Sprinkle boat sustained extensive damage on the port stern up to the midship area, including fractured top gunnel, numerous stress fractures, and the integrity of that side of the hull was compromised severely. At the time of the collision, claimants' boat had approximately five hours on the engine.
9. Sergeant Anthony Sharum investigated the accident and prepared an Accident Report on May 18, 1999. Although the Accident Report noted that the Sprinkle boat went just left as Officer Guedalia hit him, Sgt. Sharum testified in his deposition that he found there was no evidence to support any other movement of the Sprinkle boat that it turned left in front of the patrol boat. Based upon the damage to the boat, Sgt. Sharum concluded that the patrol boat came in at an angle to have hit the boat as it did.
10. Sergeant Sharum concluded that Officer Guedalia had followed the claimants' boat too closely. He further found that driver inattention on her part caused the accident. Therefore, the competent evidence in the record supports a finding that the negligence of Officer Guedalia was the proximate cause of the damage to the claimants' boat.
11. Sergeant Sharum did not recommend a citation be issued to Paul Sprinkle as a result of the collision. This was approved through the chain of command as well.
12. In a May 19, 1999 memorandum, Captain Lambert wrote to Major Everhart as follows, "The operator of the speedboat looked to the rear and immediately throttled down his motor. As the speedboat slowed, the boat turned to the port side. Because of the distance and speed of the patrol boat in relation to the stopping speedboat, Officer Guedalia was unable to avoid the resulting collision."
13. Officer Guedalia's maneuver to cut to starboard and reverse the throttle was unreasonable in light of the Inland Steering and Sailing Rules, which provide that if there is sufficient searoom, alteration of course alone may be the most effective action to avoid a close-quarters situation. In this case, there was no other boat in the vicinity of these two boats, and Officer Guedalia had ample searoom to the left or port to avoid a collision.
14. As this was a law enforcement stop, the responsibility falls to the officer approaching the boat to maintain sufficient distance and speed in case the stopping boat goes left or right. Officer Guedalia breached this duty to approach the claimants' boat in a safe and responsible manner, and as a direct result of her inattention and her following too closely, Officer Guedalia struck the claimants' boat with her patrol boat on May 9, 1999.
15. After she learned that Sergeant Sharum's report found her operation of the patrol boat to be the cause of the collision, Officer Guedalia prepared a memo to Sergeant Sharum to explain her version of the collision. Officer Guedalia elaborated in her trial testimony that Mr. Sprinkle was traveling forward the entire time and that he did not put his boat in neutral. She further contends that she was not even with the Sprinkle boat until he turned to the left, and that once he turned to the left, he kept coming over in her path. Her testimony is not accepted as credible. First, it is illogical to argue that a boat operating with a top speed of forty-five miles per hour can somehow defy the laws of physics to go from a position of being stationary in the water to the top speed and catch a speedboat operating at a constant speed of fifty to sixty miles per hour. Second, even if the patrol boat could somehow exceed its rate of speed to catch up with the speedboat over a distance of seventy-five yards, the trailing patrol boat should have been in the best position to observe any movement to the left by the Sprinkle boat and have ample time and distance to maneuver appropriately to avoid the collision. In addition, although Officer Guedalia offered testimony at the trial that there was a boat and jet ski in the vicinity, there was nothing in Sergeant Sharum's report to indicate that these watercraft in any way limited Officer Guedalia's ability to steer clear of the collision, had she been paying attention to her distance from the Sprinkle boat. Despite findings from superiors with the NCWRC that her boat operation was at fault for the boating collision, Officer Guedalia denied in both her deposition and trial testimony any responsibility for the accident. She further testified that they were trained to never follow a boat. However, in attempting to make a boating stop of the Sprinkle boat, that is exactly what she was doing.
16. Even assuming arguendo that the Sprinkle boat went left after the operator placed the boat in neutral, the operator of the patrol boat had the duty to maintain a sufficient stopping distance in order to avoid a collision. Officer Guedalia breached this duty, and her breach of duty was the cause of the collision between her patrol boat and the claimants' boat.
17. Officer Guedalia was involved with a boating collision on May 24, 1997 when she struck a pontoon boat. Sergeant Templeton investigated the accident and found Officer Guedalia failed to slow sufficiently and that operator inattention caused the accident.
18. The competent evidence in the record supports a finding that Officer Guedalia approached the claimants' boat at a speed in excess of that which a reasonable person would have approached the boat to make a safety stop.
19. Although in the first year, the boat would normally depreciate approximately $11,313.00. However, as a result of the boating accident, the claimants' boat was worth between $13,500.00 and $15,000.00 below book value, according to David Natkin of Carolina Marina. The cost to replace the claimants' boat following the accident was $50,935.01.
20. The claimants had planned to take five boating trips during the summer of 1999, including a trip to Charleston, South Carolina from June 4 through 6. The other trips had not been scheduled. However, there was no evidence in the record to support a finding as to the specific value for these trips. Therefore, the Full Commission is unable to assign a specific monetary figure on the damages sustained by claimants as a result of their inability to take the trips.
21. The claimants attempted to trade the damaged boat in for a new boat. They were informed the dealer would not accept the boat without repairs being made. Next, they took the boat to the recommended boat repairman. However, because of the amount of work, the boat repairs were not completed until March of 2000. Due to financial constraints, claimants were unable to lease another boat during the summer of 1999, and were without the use and enjoyment of their boat from the date of the accident until March of 2000, when the repairs were completed. Therefore, the undersigned is unable to make a finding as to the reasonable rental for a replacement boat for the time period.
22. Although the minimum monthly loan payment on the boat was $444.00, the claimants generally paid $600.00 to $700.00 per month. Over the ten-month period they were without a boat, claimants lost the value of the $6,500.00 paid on the loan.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The State is liable in tort only as provided in the Tort Claims Act. Nello L. Teer Company v. State Highway Commission, 265 N.C. 1,143 S.E.2d 247 (1965). Under the Act, the General Assembly only partially waived the State's sovereign immunity, consenting to suits for injuries proximately caused by the negligence of a State employee acting within the scope of his employment. Zimmer v. Department ofTransportation, 87 N.C. App. 132, 360 S.E.2d 115 (1987). Guthrie v.State Ports Authority, 307 N.C. 522, 299 S.E.2d 618 (1983). The scope of the Act may not be enlarged by liberal construction, the terms must be strictly construed. Alliance Company v. State Hospital, 241 N.C. 329,85 S.E.2d 386 (1955). Northwestern Distributors, Inc. v. DOT,41 N.C. App. 548, 255 S.E.2d 203, cert. denied, 298 N.C. 567,261 S.E.2d 123 (1979). Without proof of negligence by the named employee, plaintiff may not recover. Woolard v. DOT, 93 N.C. App. 214,377 S.E.2d 267, cert. denied, 325 N.C. 230, 381 S.E.2d 782 (1989).
2. To establish negligence, a plaintiff must show that: "(1) [the] defendant failed to exercise due care in the performance of some legal duty owed to [the] plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury."Bolkir v. N.C. State Univ., 321 N.C. 706, 365 S.E.2d 898 (1988). The burden is on the plaintiff to prove that an employee of the State was negligent. Bailey v. N.C. Dept. of Mental Health, 2 N.C. App. 645,163 S.E.2d 652 (1968).
3. There is negligence on the part of individual North Carolina Wildlife Resources Commission Officer Linda Guedalia, while acting within the course and scope of her employment which proximately caused the damages. Therefore, Claimants are entitled to recover compensatory damages in an amount to be specified hereafter in this Order. N.C. GEN. STAT. § 143-291, et seq.
4. Defendant failed to carry the burden of proof to establish that Paul Sprinkle was contributorily negligent. Even assuming that Mr. Sprinkle was negligent as his stopping boat moved to the left, Officer Guedalia had the last clear chance to avoid the collision. N.C. GEN. STAT. § 143-291, et seq.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Claimants shall have and recover compensatory damages from the defendants in the amount of $31,007.08.
2. Defendant's claim of contributory negligence is DENIED.
3. Defendant shall pay the costs which shall include plaintiff's reasonable attorney fees.
4. Defendants shall pay the costs of this action.
This the 13th day of December, 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER