***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence (except such evidence as is encompassed by the Full Commission's ruling on Plaintiff's Motion to Take Judicial Notice of an Adjudicative Fact, discussed below), or to re-hear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, REVERSES the Decision and Order of Deputy Commissioner Nancy W. Gregory, and enters the following Decision and Order.
 *********** STIPULATED EXHIBITS
1. By stipulation of the parties at the February 12, 2003 hearing, the following documents are received into evidence: Stipulated Exhibit Number One (1) — Plaintiff's medical records from the North Carolina Department of Correction.
 *********** MOTION TO TAKE JUDICIAL NOTICE OF AN ADJUDICATIVE FACT
Plaintiff moved to have the Full Commission take judicial notice of the section of the 2005 Physician Desk Reference setting forth product information for the drug Percocet, [1] including the section entitled "Adverse Reactions," which states, among other things: "The most *Page 3 
frequently observed adverse reactions include lightheadedness, dizziness, sedation, nausea and vomiting. These effects seem to be more prominent in ambulatory than in nonambulatory patients, and some of these adverse reactions may be alleviated if the patient lies down."
After careful review of both the written and the oral arguments of counsel, the Full Commission will ALLOW Plaintiff's Motion. Thus, the Full Commission hereby takes judicial notice of the section of the 2005Physician Desk Reference setting forth product information for the drug Percocet/Roxicet, including the section entitled "Adverse Reactions," which states, among other things: "The most frequently observed adverse reactions include lightheadedness, dizziness, sedation, nausea and vomiting. These effects seem to be more prominent in ambulatory than in nonambulatory patients, and some of these adverse reactions may be alleviated if the patient lies down." Pursuant to Rule 201(g) of the North Carolina Rules of Evidence, the Full Commission hereby accepts as conclusive the specific provisions of the 2005 Physician DeskReference that are set forth above, in more detail.
 ***********
Based upon the evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, Plaintiff was 48 years old, and an inmate with the North Carolina Department of Correction, with a possible parole date in 2005, and an expected release date in 2013.
2. Plaintiff's affidavit alleges medical negligence arising out of allegations that he was not properly counseled by the nursing and/or medical staff at North Carolina Central Prison regarding the side effects of the narcotic medication Percocet/Roxicet, which Plaintiff orally *Page 4 
ingested on July 14, 1998 and July 15, 1998 in connection with his treatment for cellulitis (bacterial skin infection) and an infected ingrown toenail. Plaintiff contends that this alleged failure to counsel Plaintiff regarding the side effects of Percocet/Roxicet caused him to experience a complete syncopal (loss of consciousness) episode, which, in turn, caused Plaintiff to fall face first onto a concrete floor. As a result, Plaintiff suffered injuries, including a broken nose, the loss of four (4) teeth, a laceration above his right eye, as well as a laceration on his right upper lip, both of which required several sutures. Plaintiff also contends that he suffers migraine headaches and congestion in his left nostril as a result of this incident.
3. Plaintiff suffered from an ingrown toenail, which became painful, swollen, and infected with early cellulitis. Plaintiff testified that the pain in his toe "throbbed all the time," and that the pain was "pretty excruciating" when he walked or otherwise put pressure on the toe. Plaintiff presented to the emergency department of North Carolina Central Prison on July 13, 1998 for evaluation and treatment of his ingrown toenail. The medical records indicate that physician assistant Cook examined Plaintiff and found that his right great toe had increasing pain, swelling, and redness. The physician assistant diagnosed Plaintiff with early mild cellulitis and a right great ingrown toenail, and prescribed Plaintiff an antibiotic to treat the cellulitis, as well as Tylenol and Percocet/Roxicet for the pain and insomnia caused by the cellulitis and the ingrown toenail. There is no indication in the medical records that any of the staff in the emergency department discussed with Plaintiff any of the side effects associated with either Percocet/Roxicet or any of the other medications prescribed to him on July 13, 1998. The medical records do indicate that Plaintiff was to return the next day or later that week if his symptoms worsened, or if he had no improvement. *Page 5 
4. An Inmate Self-Medication Dispensary Form indicates that the nursing staff dispensed to Plaintiff his antibiotic and Tylenol on July 14, 1998. Under the terms of an Inmate Self-Medication Program Instructions and Agreement Form, which Plaintiff signed, Plaintiff could administer these medications to himself, as long as he abided by the terms of that agreement. Plaintiff testified that he did, in fact, take the antibiotic prescribed to him to treat his cellulitis and his ingrown toenail.
5. A Controlled Substance Record indicates that on July 14, 1998 at 1930 (7:30 p.m.), Nurse M. Brantley administered to Plaintiff two (2) oral doses of Percocet/Roxicet to Plaintiff. There is neither any testimonial nor any documentary evidence indicating that Plaintiff experienced any side effects from the administration of these initial doses of Percocet/Roxicet. In the absence of any such evidence, the Full Commission finds that Plaintiff orally ingested the initial doses of Percocet/Roxicet without any adverse effects or complaints.
6. Also on July 14, 1998, the medical records indicate that Plaintiff returned to the emergency department for evaluation of his continued toe and foot complaints. Dr. Sobel, the physician on duty, examined Plaintiff and noted his toe to be "very red and painful." Accordingly, the physician advised Plaintiff to soak his foot in "very warm" water for 20 to 30 minutes three (3) times a day, and to return to the clinic if his toe did not improve.
7. On July 15, 1998, the Controlled Substance Record indicates that Nurse M. Brantley administered to Plaintiff two (2) oral doses of Percocet/Roxicet at 7:00 a.m. The Controlled Substance Record form does not provide a space for documentation of counseling to the inmate/patient regarding the medications being administered. There is no evidence beyond the Controlled Substance Record establishing whether Nurse Brantley or anyone else provided counseling to Plaintiff regarding the Percocet/Roxicet. In any event, this was not the first time *Page 6 
that Nurse Brantley administered oral Percocet/Roxicet to Plaintiff, and there is no evidence to indicate that Plaintiff had any adverse events or reactions in the 11 hours and 30 minutes between Nurse Brantley's first administration of Percocet/Roxicet to Plaintiff the night before and this second administration of Percocet/Roxicet to Plaintiff.
8. There is a dispute between the parties regarding the exact time that Plaintiff took the Percocet/Roxicet, and whether Plaintiff took the Percocet/Roxicet before breakfast or after breakfast on July 15, 1998. The only evidence in the record on these issues is derived from Plaintiff's testimony, and from notations in the medical records by the nursing staff contemporaneously with the incident in question. However, Plaintiff contradicts himself several times not only concerning these timing issues, but also concerning other factual points for which there appears to be documentary evidence in conflict with his testimony, such as whether Plaintiff ever received counseling about any of the medications he took while incarcerated with the North Carolina Department of Correction, and whether any physician ever told him that he needed to take Percocet/Roxicet with food, among other things. Further, Plaintiff went on to testify at the February 12, 2003 hearing that "I don't remember five years ago." With regard to the time at which Plaintiff took the Percocet/Roxicet on July 15, 1998, the Full Commission affords greater evidentiary weight to the medical records, since the documentation within these medical records is contemporaneous with the actual administration of the medication at issue, and since Plaintiff's credibility on this issue, among others, is questionable, at best. With regard to the time at which Plaintiff ate breakfast on the morning of July 15, 1998, the Full Commission again affords greater evidentiary weight to the medical records for the same reasons as those cited previously. A nursing progress note by Nurse J. Walker states that Plaintiff was "standing to go to breakfast and fell face forward on the floor" just after orally ingesting the *Page 7 
Percocet/Roxicet. Though dated July 16, 1998 at 8:00 a.m. (possibly making it a typographical error) rather than July 15, 1998, this documentation is more contemporaneous to the actual date of the incident than Plaintiff's testimony some five (5) years later.
9. According to the notes from the emergency department from July 15, 1998, the nursing staff "stated he [Plaintiff] received Percocet . . . @ 7 AM. Approx 0750 patient states he felt nausea — lightheaded and only remembers being lifted on to stretcher by staff." At the February 12, 2003 hearing, Plaintiff testified that the "Percocets caused me to pass out. I fell face first onto the concrete floor. . . ." At the August 27, 2007 hearing, Plaintiff provided greater detail, testifying that shortly after taking the Percocet/Roxicet, he "went to sit down, and I stood up because I was getting sick to my stomach. I was getting ready to go to the rest room to throw-up, and I passed out and fell face first, [and] hit the concrete floor. . . ." Based upon the competent evidence of record, the Full Commission finds, by the greater weight of the evidence, that less than an hour after Plaintiff orally ingested the Percocet/Roxicet at 7:00 a.m. on July 15, 1998, he experienced an episode of nausea and lightheadedness, promptly followed by a complete syncopal episode. As a result of this complete syncopal episode, Plaintiff fell face first onto a concrete floor and struck his face and head on the floor.
10. The medical records indicate that as a result of this fall, Plaintiff arrived via stretcher in the emergency department around 8:05 a.m. Both Dr. Sobel and Dr. Rhett Charles High, a plastic surgeon, examined Plaintiff, and found that he sustained head trauma, including lacerations over his right eye requiring sutures, a broken nose, and four (4) broken teeth, which had to be extracted later. Plaintiff underwent facial and cervical x-rays, which revealed a fracture of the left nasal bone but no other facial or cervical abnormalities. Physician assistant Dan Moore sutured Plaintiff's lacerations. In his notes, physician assistant Moore wrote that *Page 8 
Plaintiff "suffered a syncopal episode fell struckhead." (Emphasis in the original.) Further, physician assistant Moore opined, in the assessment section of his note listing Plaintiff's diagnoses, that Plaintiff suffered a "probable Vas. [abbreviation for vaso] Vagal Event." Plaintiff complained of "pretty excruciating" pain that "throbbed all the time," associated with his cellulitis and ingrown toenail, and he was, in fact, taking both Percocet/Roxicet and Tylenol for this pain and inflammation. There is no documentation in the medical record setting forth any type of association between Plaintiff's oral ingestion of Percocet/Roxicet and the complete syncopal episode he experienced on the morning of July 15, 1998.
11. Following Plaintiff's injury, he complained of headaches and some congestion in the left nostril of his nose. Plaintiff received medical treatment for these conditions at North Carolina Central Prison, as well as at the other correctional facilities in which Plaintiff was an inmate since July 15, 1998. In addition, Plaintiff received a partial denture plate to replace the teeth broken as a result of his fall. Plaintiff continues to receive occasional medical treatment and prescription medication for his ongoing headache and congestion complaints, including the medication Beconase for his nasal difficulties. Plaintiff received, and continues to receive, adequate medical and dental care for the injuries associated with his July 15, 1998 fall.
12. The April 14, 2003 Decision and Order filed by Deputy Commissioner Gregory overruled a previous evidentiary ruling of Deputy Commissioner Gregory, receiving into evidence documentation concerning the grievance Plaintiff filed with North Carolina Central Prison, alleging inadequate medical care, immediately following his fall. On this grievance documentation, Nurse Johnnie Allen Lee, whom Defendant assigned to review Plaintiff's grievance, wrote on July 23, 1998: "[y]our concern is legitimate. You should have been advised of the effects of this medication [Percocet/Roxicet]. The fact that you had taken the medication *Page 9 
previously, the nurse believed [sic] you knew the effects. This matter has been handled administratively." There is no evidence indicating whether Nurse Lee, in her review of this matter, interviewed Nurse Brantley in order to gather her recollection of whether she provided counseling to Plaintiff without documenting the same, on either of the occasions Plaintiff received this medication.
13. At the second hearing of this matter on August 27, 2007, Defendant offered the expert testimony of Ms. Linda Cross, a registered pharmacist employed by the North Carolina Department of Correction. Ms. Cross testified that the most common side effects associated with the oral ingestion of Percocet/Roxicet are dizziness, lightheadedness, and euphoria. More importantly, Ms. Cross testified that orally ingesting Percocet/Roxicet is not a likely cause of "sudden unconsciousness," which is a complete syncopal episode.
14. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff orally ingested two (2) tablets of Percocet/Roxicet 11 hours and 30 minutes prior to the incident of which Plaintiff complains, and did not experience any side effects of this drug. There is no evidence in the record to suggest that orally ingesting Percocet/Roxicet on an empty stomach will cause a complete syncopal episode in a person, and this appears to be the primary difference between the July 14, 1998 administration of Percocet/Roxicet to Plaintiff at 7:30 p.m. and the July 15, 1998 administration of Percocet/Roxicet to Plaintiff at 7:00 a.m. Thus, the Full Commission finds that Plaintiff had some awareness as to how his body would react to the oral ingestion of Percocet/Roxicet.
15. Plaintiff has not put on any expert witness testimony either opining that Defendant and its agents breached the applicable standard of care owed to Plaintiff, or setting forth a causal relationship between any alleged breach in the applicable standard of care and the *Page 10 
damages of which Plaintiff complains. Furthermore, Plaintiff has not put on any expert witness testimony setting forth that complete syncopal episodes are a common side effect, or even an uncommon side effect, of orally ingesting Percocet/Roxicet. Specifically, the section of the 2005Physician Desk Reference to which Plaintiff requests the Full Commission to take judicial notice states that: "[t]he most frequently observed adverse reactions [to Percocet/Roxicet] include lightheadedness, dizziness, sedation, nausea and vomiting. These effects seem to be more prominent in ambulatory than in nonambulatory patients, and some of these adverse reactions may be alleviated if the patient lies down." This record is completely devoid of any testimony relating a complete syncopal episode, which is what Plaintiff experienced, by his own admission, and the oral ingestion of Percocet/Roxicet.
16. Based upon the greater weight of the evidence, the Full Commission finds that Plaintiff failed to meet his burden of proving that Defendant breached the applicable standard of care and proximately caused the injuries of which Plaintiff complains.
 *********** CONCLUSIONS OF LAW
1. Under the North Carolina Tort Claims Act, a plaintiff must allege and prove, by the greater weight of the evidence, negligence of a named officer, agent, or employee of the defendant agency. N.C. Gen. Stat. § 143-291 et seq. (2007); Creel ex rel. Morgan v. North Carolina Dept.of Health and Human Services, 152 N.C. App. 200, 566 S.E.2d 832 (2002),review denied, 357 N.C. 163, 580 S.E.2d 363 (2003); Woolard v. Dept. ofTransp., 93 N.C. App. 214, 377 S.E.2d 267 cert. denied, 325 N.C. 230,381 S.E.2d 792 (1989).
2. Plaintiff must show that the injuries sustained were the proximate result of a negligent act of a named state employee acting within the course and scope of his or her *Page 11 
employment. Plaintiff must prove: (1) the existence of a duty; (2) a breach of that duty by the defendant; (3) an injury sustained; (4) as a proximate result of the breach of duty. Becker v. N.C. Dept. of MotorVehicles, 177 N.C. App. 436, 628 S.E.2d 446 (2006), review denied,361 N.C. 166, 639 S.E.2d 648 (2006).
3. Plaintiff failed to meet his burden of proving, by the greater weight of the evidence of record, that Defendant breached the applicable standard of care and proximately caused the injuries of which Plaintiff complains. Id.; Tort Claims Rules of the North Carolina Industrial Commission, Rule T201.
4. As a result of Plaintiff's failure to meet his burden of proof, Plaintiff is not entitled to recover damages from Defendant. N.C. Gen. Stat. § 143-291 et seq. (2007); Taylor v. Jackson Training School,5 N.C. App. 188, 191, 167 S.E.2d 787, 789 (1969); Bailey v. N.C. Dept. ofMental Health, 2 N.C. App. 645, 651, 163 S.E.2d 652, 656 (1968).
 *********** ORDER
1. Plaintiff's claim for money damages is hereby DENIED.
2. Neither party is obligated to pay costs, as Plaintiff filed suit as an indigent.
This the __ day of _____ 2008.
S/_________________________ BERNADINE S. BALLANCE COMMISSIONER
 CONCURRING: *Page 12 
 S/_________________________ DANNY LEE McDONALD COMMISSIONER
 S/_________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
[1] Both Percocet and Roxicet are brand names of the narcotic medication containing acetaminophen and oxycodone hydrochloride. According to Plaintiff's medical records, the drug administered to him on the morning of July 15, 1998, and as such, the drug that is the subject of Plaintiff's claim, was Roxicet, not Percocet. Plaintiff, however, was somehow led to believe that the drug administered to him on the morning of July 15, 1998 was Percocet, and did not have an opportunity to review his medical records until the initial hearing on February 12, 2003 in order to learn that he actually took Roxicet on that day. Because Percocet and Roxicet have the same active ingredients, and are used in most health care settings interchangeably, the Full Commission will consider the terms to be synonymous, but for the sake of clarity, will refer to this drug for the remainder of this Decision and Order as Percocet/Roxicet.